THE STATE v. DAVID C. HALSTED ET AL.

1. The term of office of chosen freeholders commences on the second Wednesday of May, and ends on the corresponding day in the succeeding year. The commencement of the fiscal year of the board of chosen freeholders of Hudson county was changed, by the act of 1874, p. 202, from the 1st day of May to the 1st day of December in each year, and, by the same act, the amount to be raised for county purposes must be fixed at a meeting of the board held prior to July 15th in any

State v. Halsted.

year. It was the duty of the board of freeholders who came into office on the second Wednesday of May, 1876, to make, prior to July 15th, 1876, the appropriations necessary for the fiscal year from December 1st, 1876, to December 1st, 1877. After the 15th day of July, 1876, they had no authority to make an additional appropriation, save only for the purpose in Section 5 of the act of 1874 specified; nor had they any power to make an appropriation for the fiscal year from December 1st, 1877, to December 1st, 1878.

2. Under the act of February 7th, 1876, (*Laws*, 1876, *p.* 16,) members of said board of freeholders are indictable for passing, December 14th, 1876, a resolution to purchase property, and for issuing, in payment therefor, bonds to the amount of $225,000, payable out of the amount appropriated for the fiscal year from December 1st, 1877, to December 1st, 1878, no appropriation having been made for that year, and no power existing in the members of said board to make such appropriation.

3. Where a statute specifically defines what acts shall constitute a misdemeanor, it is sufficient in the indictment to bring the defendant within the statutory description of the crime. The distinction is between cases where a legislative act forbids a ministerial officer to do an act, which, by reason of such prohibition, becomes indictable at common law, and cases where the statute declares what shall be indictable. In the former case, under the common law, allegation of corrupt intent or guilty knowledge is essential in the indictment; in the latter, it is otherwise.

4. Ignorance of the law is no excuse for crime. The case of *State* v. *Cutter*, 7 *Vroom* 125, distinguished.

On motion to quash indictment.

Argued at February Term, 1877, before Justices DEPUE, VAN SYCKEL and SCUDDER.

For the state, *A. Q. Garretson* and *Vanatta*, Attorney-General.

For the defendants, *J. H. Lippincott* and *F. McGee.*

The opinion of the court was delivered by

VAN SYCKEL, J. The questions to be disposed of in this case arise upon a motion to quash an indictment against certain members of the board of chosen freeholders of the county of Hudson, under the act of February 7th, 1876. *Laws*, 1876, *p.* 16.

The passage of the following resolution by the votes of the indicted freeholders, December 14th, 1876, its approval by the director, December 16th, 1876, and the immediate issue of bonds under it to the amount of $225,720, constitute the alleged violation of the statute upon which the indictment is based :

"*Resolved,* That it is the judgment of this board that so much of the lands offered by said Crampton as are needed for the use and convenience of the county, for a site on which to erect a new court-house and rooms and offices for the safe keeping and preservation of the public records, and for the convenience of the public and accommodation of the courts, and juries and witnesses attending upon the same, and for the meetings of the grand jury and witnesses requested or desiring to appear before the same, and for the sheriff, county clerk and prosecuting attorney, the surrogate, register, and meetings and business of the board of chosen freeholders, and of the board of health, as lies north of the southerly line of Waldo avenue, if the same were produced across said property, as shown on a map of said property furnished to and now in possession of this board ; and that the same is hereby taken and purchased at the price of two thousand dollars for every twenty-five hundred square feet thereof; and that, in payment for said lands, there be issued to said Crampton a bond or bonds of the county of Hudson, payable out of the amount appropriated and limited for the expense of the next fiscal year, said bonds to run one year from the date thereof, and bearing interest at the rate of seven per cent. per annum."

The indictment contains two classes of counts.

The first, third, fourth, fifth and sixth counts charge the defendants with incurring obligations in excess of the appropriation and limit of expenditure provided by law for the purposes of the said board of chosen freeholders for the fiscal year beginning December 1st, 1877, and ending December 1st, 1878.

The second, seventh, eighth, ninth and tenth counts charge the same offence in excess of the appropriation for the year beginning December 1st, 1876, and ending December 1st, 1877.

It is urged, in support of the motion to quash, that no in-dictable offence is averred in either class of counts.

The term of office of chosen freeholders commences on the second Wednesday of May, and ends on the corresponding day in the succeeding year. *Nix. Dig., "Freeholders,"* § 38 ; *Matter of Highway,* 1 *Harr.* 91.

The commencement of the fiscal year of the board of chosen freeholders of the county of Hudson, was changed by the act of 1874, *p.* 202, from the 1st day of May to the 1st day of December, and the same act, by its fifth section, requires the amount to be raised for county purposes to be fixed at a meeting of the board held prior to July 15th in any year.

By the terms of this act, therefore, the fiscal year referred to in the first count of the indictment commenced December 1st, 1877, and terminated December 1st, 1878.

The obnoxious resolution, passed December 14th, 1876, provides that in payment for the lands purchased, bonds of the county of Hudson be issued, payable out of the amount appropriated and limited for the expense of the next fiscal year.

This is clearly a charge upon the fiscal year from December 1st, 1877, to December 1st, 1878, which is the fiscal year commencing next after December 14th, 1876. The language used can bear no other interpretation. The sufficiency of the first class of counts will, therefore, be settled by ascertaining whether there is, in proper form, an averment that the defendants did incur obligations in excess of the appropriation and limit of expenditure provided by law for the fiscal year from December 1st, 1877, to December 1st, 1878.

These counts specifically allege that neither on the 14th day of December, 1876, nor at any other time, had any appropriation whatever, or any limit of expenditure whatever, for the purposes of said board, been provided by law for that fiscal year, and that the said board did, by the aforesaid resolution, and the issue of bonds thereunder, incur the said excessive obligations. If no appropriation whatever had

been made, the obligations incurred for the year in question must have been in excess.

To this the defendants make two answers: *First.* That the board which passed the resolution of December 14th, 1876, had until the second Wednesday of May, 1877, to fix the appropriation for the year commencing December 1st, 1877; and, *second,* that the act of 1876 does not make it a crime to incur obligations in advance of an appropriation, but in excess thereof; that the act becomes criminal only when, the limit being fixed, it is transcended.

The term of office of the members of the board in office December 14th, 1876, commenced on the second Wednesday of May, 1876, and ended in May, 1877.

By the fifth section of the act of 1874, before referred to, it is provided, among other things, that the commencement and termination of the fiscal year of the board of chosen freeholders of Hudson county be changed from the 1st day of May to the 1st day of December, in each year, and that a fiscal year commence on the 1st day of December, 1873, and terminate on the 1st day of December, 1874, and yearly thereafter between said periods; and in and by said act it was further enacted, among other things, that the expenditures of the board of chosen freeholders, in any fiscal year, should not exceed the amount raised by tax for said year, unless by the spread of an epidemic or contagious disease a greater expenditure should be required for the protection of the public health, and the board may fix the amount to be raised by tax for county purposes at any meeting of said board held prior to July 15th in any year.

This section applies in terms to the fiscal year, not to the current year for which freeholders hold their office. The defendants came into office in May, 1876, and, by this enactment, had until July 15th, 1876, to determine and declare what sum should be raised for the ensuing fiscal year, that is, from December 1st, 1876, to December 1st, 1877, which sum would then have been levied by taxation, and duly appropriated to that year. The presumption cannot arise, in aid of the

defence, that the obligation was incurred in view of the fact that a proper appropriation would be made by them before their term of office expired, in May, 1877, for the fiscal year from December 1st, 1877, to December 1st, 1878.

That board had no power whatever to make an appropriation for the year commencing December 1st, 1877.

Such construction of the act of 1874 would sweep away the beneficial protection of the limitation that the expenditures in the fiscal year shall not exceed the amount raised by tax for that year, and would enable the board to expend money and incur obligations without limit, by the simple device of declaring that, on the day before their term of office expired, they would pass a resolution to cast the excessive disbursements upon the next fiscal year. The primary object of this legislation was to limit and restrain expenditures to the sum raised by tax, and thereby prevent the accumulation and increase of the county debt. The clear purpose of the act will be thwarted by the construction contended for by the defendants. The defendants had no power to provide for the fiscal year commencing December 1st, 1877, after their term of office expired; that duty devolved upon their successors, whose term commenced the second Wednesday of May, 1877, and who were required to discharge that duty prior to July 15th, 1877.

After they have fixed the sum to be raised by tax for the fiscal year, it cannot be exceeded; neither they themselves nor their successors can enlarge it after the 15th day of July, save for the exceptional purposes in the act specified.

When the defendants came into office in May, 1876, they were without power to exceed, for the balance of the fiscal year ending December 1st, 1876, the appropriation made by their predecessors; the time had passed for enlarging that. But if, in their judgment, any necessary object had not been provided for, they could have directed money to be raised for that, for the fiscal year over which they had control, commencing December 1st, 1876. This interpretation will preserve to every incoming board, intact, the power granted by

the statute, and hold them to the responsibility manifestly intended to be imposed. Any other construction will make the limitation, established for the public protection, wholly nugatory, and subject to evasion at will.

The argument that it is no crime to incur an obligation in advance of an appropriation, that it cannot be in excess of an appropriation until an appropriation is made, is equally untenable, and, if well founded, would render the law futile. In that case, the board could expend money without restraint, and defy the law by refusing to make any appropriation during their official existence, thus setting up their wilful refusal to discharge that duty as a defence to a criminal prosecution.

The law is, that the appropriation must precede the expenditure, and the allegation in the indictment that the defendants have issued bonds to the amount of $225,000 in excess, without a preceding appropriation to meet their payment, will, if proved, make them amenable to the criminal statute.

The case of *Weston* v. *Syracuse,* 17 *N. Y.* 110, does not support the contrary view. In that case the prohibition was against contracting debts after a certain date. The alleged offence consisted in entering into a contract for work to be performed during the next year. This was held not to be a debt, but only an obligation, and, therefore, not within the statute. The statute of 1876 expressly prohibits the incurring of obligations, and differs from the New York statute in requiring the appropriation to precede it.

In the other class of counts it appears that on the 14th day of December, 1876, the board of freeholders passed the resolution before set forth, and issued bonds under it; and that prior thereto, on the 27th day of June, 1876, they had passed the following resolution :

" *Resolved,* That the amount of county tax to be raised for county purposes of the county of Hudson, for the fiscal year commencing on the first day of December, eighteen hundred and seventy-six, be and the same is hereby fixed at the sum of

six hundred thousand dollars, to be apportioned by the board; for the equalization of taxes, and so forth, among the towns, townships and cities of the county, and the clerk of the. board of freeholders is hereby directed to officially notify said; board for the equalization of taxes, and so forth, of the. action. of this board, with service of a copy of the above resolution."

It is insisted that by this resolution it is apparent, on the. face of the indictment, that for the fiscal year from December. 1st, 1876, to December 1st, 1877, there was a lawful appropriation of $600,000, and that it nowhere appearing that any part of the $600,000 had, at the time of passing the resolution of December 14th, 1876, been expended, the presumption is that that entire sum was then undisbursed, and that, therefore, the issue of bonds to the amount of $225,000 was. a lawful exercise of authority.

The resolution of December 14th, 1876, in terms negatives. the pretence that the $225,000 were to be supplied out of the appropriation of June 27th, by expressly providing that it shall be payable out of the amount appropriated and limited for the next fiscal year, that is, the year commencing December 1st, 1877. It is manifest, therefore, that the issuing of the bonds for the purchase price of the court-house property, left the appropriation of June 27th untouched. Assuming that the entire sum of $600,000 had been collected, and was in the county treasury at the date of the December resolution, it certainly would not have been in contravention of the criminal statute, for the board of freeholders, after that date, to have appropriated and applied that whole sum to the necessary purposes of the county. It was left intact and undiminished by the purchase of the court-house property, and the resolution expressly excluded the idea that it could be. applied in liquidation of the bonds which were issued. The. violation of the statute would have been, not in the subsequent expenditure of the June appropriation, but in the issue of bonds which were to be payable out of an appropriation not yet made. In that, an obligation was incurred without a prior appropriation to meet it, and, therefore, necessarily in

excess of any appropriation. In either case, the statutory provision has been violated by the defendants.

As a defence to the entire indictment, the ground is taken that the board is not limited by the act of 1874 to the sum appropriated prior to July 15th in any year, but that, notwithstanding the act of 1874, the provisions of the general law relating to freeholders authorizing (by Sections 4, 12 and 13) appropriations to be made at any time, applies to Hudson county.

If this is true, it is difficult to conceive the object of the framer of the act of 1874, in incorporating in it the fifth section.

The suggestion that the act of 1874 was not intended to restrain subsequent appropriations, if the annual levy should prove inadequate to any unforeseen demand, cannot be adopted without doing violence to well-settled rules of construction. The fifth section of the act of 1874, by expressly excepting the unforeseen contingency of an epidemic or contagious disease, impliedly excludes all other special purposes. This section will be without effect, if the right still exists to make special appropriations at will.

The remaining objection to the sufficiency of the indictment is, that it does not charge a corrupt intent or guilty knowledge. It is a general rule that all indictments upon statutes must state the circumstances which constitute the definition of the offence in the act, so as to bring the defendant within it. 1 *Chit. Cr. Law*, § 281.

Where the statute specifically sets out what acts shall constitute the crime, it is, as a general rule, sufficient in the indictment to charge the defendant with acts coming fully within the statutory description, in the substantial words of the statute, without any further expansion of the matter. 2 *Bish. Cr. Proc.*, § 611, and cases cited; 1 *Bish. Cr. Proc.*, § 612, and notes.

It has long been the rule in this state, that in indictments for misdemeanors created by statute, it is sufficient to charge

the offence in the words of the statute. *State* v. *Stimson*, 4 *Zab.* 9 ; *State* v. *Thatcher*, 6 *Vroom* 445.

This is always subject to the qualification that the crime must be set forth with clearness and all necessary certainty, to apprise the party accused of the offence with which he stands charged.

In the present case it would not suffice to allege, in the general words of the statute, that the defendants did incur an obligation in excess of the appropriation ; the particular act which constitutes such disregard of the statutory provision must be disclosed.

By the terms of the statute upon which this indictment is framed, guilty knowledge or corrupt intent forms no part of the act which is declared to be indictable. The indictment, therefore, conforming to the language of the statute, is good without averring that the forbidden act was done corruptly. The distinction is between cases where a legislative act forbids a ministerial officer to do an act which, by reason of such prohibition, becomes indictable at common law, and cases where the act specifically defines what shall be indictable. In the former case, under the common law, allegation of corruption is essential ; in the latter, it is otherwise. 1 *Whart. Cr. Law*, § 297, and cases cited ; 2 *Bish. Cr. Proc.*, § 834.

Where an act is declared to be unlawful, and is expressly made indictable, an evil intent will be presumed in its commission, and need not be averred.

Corruption in the exercise of official functions is indictable in the absence of the statute.

It is, perhaps, safe to say that in all cases where a statute creates an offence and mentions some intent as an element therein, the indictment must follow the statute, and specify the intent ; but if the statute is silent concerning the intent, there need be no allegation of intent in the indictment. 1 *Bish. Cr. Proc.*, § 523, and notes.

Where the allegation is that the defendant merely did an act which, in its nature, might flow as well from a pure mind

as a corrupt one, it does not sufficiently charge a crime; it is necessary to express an evil intent. As an example, larceny would not be charged by an averment that the defendant unlawfully took the goods of another; he might have taken them in good faith under a claim of title. A felonious intent must be declared, to constitute the crime.

This rule applies where a particular intent is an element of the imputed crime.

But when the defendant is brought within the statutory definition of the offence, the wrongful intent is an inference which the law draws from the act itself, which he has committed.

In Massachusetts it has been held that, under a statute forbidding the sale of adulterated milk, the indictment need not allege the defendant's knowledge of the adulteration. *Commonwealth* v. *Smith*, 103 *Mass.* 444; *Commonwealth* v. *Farren*, 9 *Allen* 489; *Commonwealth* v. *Boynton*, 2 *Allen* 160.

Mr. Bishop, in referring to these cases, says that the analogies connected with the law of intent sufficiently establish this doctrine.

According to constant practice, the indictment does not allege that the defendant was of sound mind when he committed the criminal act, or, if a married woman, that she was not acting in presence of and under coercion of her husband. These are matters to be set up in defence.

*Cutter* ads. *State*, 7 *Vroom* 125, relied upon by the defence, does not relate to the sufficiency of the indictment, nor can it be used as authority to overthrow the accepted doctrine that ignorance of the law is no excuse for crime.

The defendant in that case, who was a justice of the peace, offered to show, on his trial, in defence to the charge of extortion, that he had taken the moneys innocently, under the belief that he had a right to them. In refusing to receive evidence to disprove the corrupt intent, it was held that the court below erred, and certainly no one can question the correctness of this decision. A justice of the peace, being called upon to construe a statute with reference to his own fees, is

entitled to the same immunity against prosecution which he enjoys in the exercise of any other judicial function, so long as he acts in good conscience.

A corrupt purpose was essential to make him amenable to indictment.

I do not say that a case may not occur in which ignorance of the law will excuse, but it must be an extreme one, and, should it arise, the only question for the jury will be the good faith of the defendant. It will surely be a novelty in the administration of public justice, to be constantly instituting inquiry as to the extent of the offender's knowledge of the law.

The necessities of society require that men shall be held for the consequences of their mistakes; otherwise, the greater the ignorance, the more complete the immunity.

To enable those charged with municipal trusts to plunder triumphantly, it is necessary only to lay down the rule that they may shelter themselves behind their ignorance of the law.

It would be hazarding too much to superadd such an incentive to fraud and peculation to the prevailing propensity of the times.

The motion to quash should be denied.