THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. JAMES PROFITA, FRANK FAILLA, JOHN CAMMARIATO AND HARRY KULLER, PLAINTIFFS IN ERROR.

Argued October 29, 1934—Decided January 24, 1935.

For the State of New Jersey, *James D. Carpenter, Jr.*

For the plaintiff in error James Profita, *Minturn & Weinberger;* for the plaintiff in error Harry Kuller, *Chandless, Weller & Selser;* for the plaintiffs in error Frank Failla and John Cammariato, *John W. Griggs.*

The opinion of the court was delivered by

CASE, J.    James Profita, Frank Failla, John Cammariato and Harry Kuller were convicted by a jury in the Passaic Quarter Sessions of the crime of conspiracy.    They went by strict writ of error and bill of exceptions to the Supreme Court, and from the judgment of affirmance therein now appeal to us.

They first present that there was no plea or issue to be determined by the jury, that consequently each conviction was a nullity and that the trial court erred in refusing to

arrest judgment when so moved. The point is technical. Outside of its technicality it has no merit.

The defendants had made their pleas of not guilty. As the trial was about to begin their counsel sought, and by grace of the court were permitted, to make designated motions in their behalf. The motions should have been made before the taking of the pleas, and to relieve the defendants of the embarrassment in which they found themselves they were allowed to withdraw their pleas for the precise and limited purpose of making those motions. The motions were heard and denied. The defendants then went to their trial in all ways as on the issue which they themselves had framed. Had they made contemporaneous objection, the only result would have been a formal reinstatement of the pleas. It is a just inference that the defendants, the prosecution and the court considered the overruling of the motions as such a reinstatement. *People* v. *Afton* (*Ill.*), 101 *N. E. Rep.* 557; *People* v. *Brodner*, 107 *N. Y.* 1; 13 *N. E. Rep.* 87. Under the circumstances it is to be said here, as was said in *Garland* v. *Washington*, 232 *U. S.* 642; 58 *L. Ed.* 772, that the reinstatement of the pleas "would have been a wholly unimportant formality;" and that, for the practical purpose of providing an issue and of giving the defendants a fair trial thereon, it was as unessential as the *similiter* was held to be in *Berrian* v. *State*, 22 *N. J. L.* 9 (at *p.* 30).

The decisions of the Supreme Court in *State* v. *Brennan*, 83 *N. J. L.* 12, and *State* v. *Acton*, 109 *Id.* 34, and the decision of this court in *State* v. *Williams*, 89 *Id.* 234, cited in support of the point, do not avail. The only pertinency of the opinion in the *Williams* case is the observation, *obiter*, that the record, in a criminal case, must show the issue (indictment and plea). The present record does, in our view, show the issue. In the *Brennan* case the defendant had never entered a plea to the charge upon which he was found guilty. The opinion in the *Acton* case is subject to these observations: The finding for reversal was reached upon other and sufficient grounds and upon those grounds exclusively was sustained on appeal in this court (110 *N. J. L.*

499) ; and although the defendant, having entered a plea of not guilty, was permitted to withdraw that plea and did subsequently move to quash the indictment, the permission to withdraw seems to have been general and not, as in the case at bar, limited to the making of specified motions.

We conclude that the point sets forth no error. This for two reasons: First, the original pleas were lifted for a specific purpose and automatically fell back into place when that purpose was served, thus making an issue of guilt or innocence; and second, the defendants, having gone to their trial in apparent reliance upon pleas theretofore entered, must be held to have waived the formality of a reinstatement.

It is next said that the trial court erred in refusing to quash the indictment. The faults laid against the indictment are that it is duplicitous; is vague, uncertain, indefinite and fails to set forth a crime in the manner contemplated by law; does not divide its subject-matter into counts; involves events said to have occurred before the time of the conspiracy; and illegally charges several substantive crimes in one indictment. Stripped of surplusage (*State* v. *Kuehnle,* 85 *N. J. L.* 220), the indictment charges that the defendants conspired to induce named individuals to keep in their respective places of business, to the percentage profit of the conspirators and the named persons, slot machines which might be, could be and were used for gaming and gambling for money and other valuable things. The contemplated acts were crimes under chapter 140 (*Pamph. L.* 1907; 2 *Comp. Stat., p.* 1766, § 65a), and conspiring to perform those acts was therefore a crime under section 37 of the Crimes act. 2 *Comp. Stat., p.* 1757, § 37. The indictment was for conspiracy, and the court definitely so instructed the jury. The defendants do not make the point that so much of the indictment as charges the foregoing matters does not set up the crime of conspiracy, but they complain that the indictment, for the particular reasons enumerated above, does not charge the crime in the manner contemplated by law. The allegations said to constitute the laying of other accusations do not set up substantive offenses but recite events that were incidental to the con-

spiracy or that were overt acts done agreeably to and in pursuance of the conspiracy. The crime of conspiracy is not to be confounded with the objects of the conspiracy. A combination to commit several crimes is a single offense. *Noyes* v. *State,* 41 *N. J. L.* 418. We find that the indictment clearly charges an offense, a single offense, namely, the crime of conspiracy, and that therefore one count was adequate and the count is not duplicitous; and, as is apparent from a reading thereof, that the indictment does not charge events as having occurred before the time of the conspiracy.

The motions to quash were properly denied.

Appellants' third point is that the court erred in refusing to sustain a challenge to the array of petit jurors. The state makes no objection either to the sufficiency of the record for the presentation of the point or to the fact or method of the challenge. We go directly to the merits of the argument.

As the January, 1934, term of the Passaic county courts approached, there was no jury commissioner (see statute *infra*), no panel of grand jurors and no panel of petit jurors for the trial of causes, either civil or criminal. In that emergency Mr. Justice Heher appointed *elisors* who functioned forthwith. The challenge was to the array of petit jurors so presented. The argument, as we understand it, is primarily that the sheriff was not incapacitated and that therefore the court should have appointed a jury commissioner *pro tempore* to act with the sheriff; secondarily, that if the sheriff was in fact incapacitated, the coroner was, by law, authorized to be substituted in his place; and, generally, that the court was without power, in the circumstances, to appoint *elisors*.

Formerly the *venire* for the summoning and production of jurors was addressed to the sheriff, and on his death or disability to the coroner; this both by common law (3 *Bl. Com., ch.* 23), and by statute (*Paterson* 137) (An act constituting courts of oyer and terminer and general gaol delivery, passed November 27th, 1794—§ 5; *Ibid.* 253, § 2— Supplement to the act entitled "An act concerning sheriffs," passed March 10th, 1797). But there was a reserve power in

the courts, in the event of a breakdown in the usual agencies, to require the jury to be summoned by persons of its own selection; and the officers so selected were called *elisors*. Blackstone put it thus:

"If the sheriff be not an indifferent person; as if he be a party in the suit, or be related by either blood or affinity to either of the parties, he is not then trusted to return the jury, but the *venire* shall be directed to the coroners, who in this, as in many other instances, are the substitutes of the sheriff, to execute process when he is deemed an improper person. If any exception lies to the coroners, the *venire* shall be directed to two clerks of the court, or two persons of the county named by the court, and sworn. And these two, who are called *elisors, or electors, shall indifferently name the jury, and their return is final; no challenge being allowed to their array."

Our early statutes assumed rather than specifically mentioned the existence of the *elisor*-appointing of the court, as in "An act relative to juries and verdicts" passed November 10th, 1797 (*Paterson* 260, § 10), "no sheriff, coroner, *or other officer*," and section 15, "the sheriff of the proper county, *or other officer,* who ought to empanel the jury in such case." But section 9 of the statute of November 6th, 1827 (*Elm. Dig.* 271, § 36), was specific: "All coroners and *elisors* to whom any writ or writs of *venire facias* may be directed * * * as heretofore * * *;" as was also the statute of March 7th, 1837, section 3 (*Elm. Dig.* 273, § 47:

"Whenever any writ or writs of *venire facias* shall be directed to the coroners of any county, or to *elisors* appointed by any court in this state, such writ or writs shall be executed, and the juries thereby required shall be summoned by such coroners or *elisors* in the same manner as by law was required to be done in such cases before the passage of the act entitled, 'An act relative to jurors,' passed the ninth day of March, A. D. one thousand eight hundred and thirty-six."

Coming to the statutory law as it was in 1910 at the publishing of the Compiled Statutes, it was still "the duty of each sheriff in this state or, in case of his death or disability,

of the coroners of the respective counties or *elisors* appointed by the court * * *" (3 *Comp. Stat., p.* 2967, § 13a), to prepare the jury list and, as directed in the *venire* (3 *Comp. Stat., p.* 2966, § 8), to summon the jurors for service. Upon the law as it then was the opinions of this court were written in *State* v. *Zeller,* 83 *N. J. L.* 666, holding that an indictment found by an *elisor*-drawn grand jury may not be questioned upon the ground that after the disqualification of the sheriff the coroner should have functioned rather than the *elisors,* the reasoning of the opinion being upon the principle of "apparent authority" (*Erwin* v. *Jersey City,* 31 *Vr.* 141), and in *State* v. *Kuehnle, supra,* sustaining the right of the *oyer* to issue a *venire* to *elisors* in proper instances; and also the Supreme Court opinion in *State* v. *Egan,* 82 *N. J. L.* 317, determining that upon the disqualification of the sheriff the court could direct the *venire* either to the coroners or to *elisors* as it should determine, a question which, however, was later left undecided by this court in the *Zeller* case, *supra.* By chapter 20 of the Special Session of 1913 (*Pamph. L.* 1913, *p.* 828), the legislature took from the sheriff, by revision of the subject-matter, the right to act alone in selecting juries and provided that a citizen should be appointed by the chancellor to be designated a commissioner of juries and that he and the sheriff should constitute "the commissioners of juries." The two-man commission still endures, the appointing of the citizen commissioner having been transferred by amendment (*Pamph. L.* 1929, *ch.* 17), from the chancellor to the governor acting with the advice and consent of the senate. That amendment, section 1, further provides that if the citizen commissioner be absent or sick on the day fixed for the drawing of a grand or petit jury, the presiding justice or judge shall appoint a temporary commissioner of juries, but makes no provision for the functioning of the commissioners during a vacancy in the office of the citizen commissioner.

Therefore, there being a vacancy, in December, 1933, and January, 1934, in the office of citizen commissioner of juries in Passaic county, the machinery set up by the statute could

not operate. With the "commissioners of juries" statute still on the books, the sheriff could not act alone. There was no authority for the court to name a commissioner to act with the sheriff. The coroner had no power because his position was simply that of "a substitute for the sheriff." It need not be considered whether the governor could have made an *"ad interim* appointment." He did not do so. The question is whether, under those circumstances, the court could act. The procedure by *elisors* remained extant, unrepealed by the "jury commissioner" legislation. *State* v. *Bolitho,* 103 *N. J. L.* 246; *affirmed,* 104 *Id.* 446; also, see section 13 of chapter 20, Special Session 1913. *Pamph. L.* 1913, *p.* 833. It was in full force and, during the incapacity of other agencies, was utilized, properly so, in the instant case. There was no error in overruling the challenge to the array.

Most of the remaining points are repetitions of questions hereinbefore determined, others ground in proofs which are not before us. None presents error.

The judgment below is affirmed.

*For affirmance*—THE CHANCELLOR, LLOYD, CASE, DONGES, PERSKIE, KAYS, HETFIELD, DEAR, WELLS, JJ. 9.

*For reversal*—None.