107 N.J. Super. 444 (1969)
258 A.2d 894
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CHARLES G. BONCELET, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 27, 1969.
Decided November 17, 1969.
*447 Before Judges KILKENNY, LABRECQUE and LEONARD.
Mr. Frank P. Villanova argued the cause for appellant.
Mr. Fred Kieser, Deputy Attorney General, argued the cause for respondent (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney).
*448 PER CURIAM.
Defendant Charles G. Boncelet appeals from his conviction on an indictment for violations of N.J.S.A. 40A:4-57 and 58 and N.J.S.A. 2A:135-5.
Following a grand jury investigation of the financial affairs of the Borough of Carteret, defendant, a member of the borough council and chairman of its finance committee during the year 1965, was indicted in a four-count indictment. The first two counts charged that between September 1 and December 16, 1965 he, together with three other councilmen, voted to incur liabilities, chargeable to four line items in the budget, in amounts which exceeded the sums appropriated, in violation of N.J.S.A. 40A:4-57 and 2A:135-5. Counts three and four charged that, in voting to transfer funds from two other line item appropriations on December 29, 1965 to make up the overexpenditures cited above, he overexpended the two appropriations by some $834.82, in violation of N.J.S.A. 40A:4-58 and 2A:135-5.
The State's proofs were lengthy and involved. Without detailing them here, there was evidence from which the jury could have concluded that between September 1, 1965 and December 16, 1965 the council, by a majority vote of defendant and three of his colleagues (the latter were separately indicted and tried, see State v. Bohanek, et al., Docket A-1613-67), overexpended the appropriations of four line items in the 1965 budget as follows:

(a) Recreation, Other
 Expenses Account $6,376.71
(b) Free Public Library,
 Other Expenses Account 2,408.78
(c) Parks and Playgrounds,
 Other Expenses Account 4,343.78
(d) Street Cleaning, Other
 Expenses Account 4,197.54

and that on December 29, 1965 they voted to transfer funds from other accounts to make up the overexpenditures, purportedly pursuant to N.J.S.A. 40A:4-58, which transfers resulted in the overexpenditure of two other line items: Administrative *449 and Executive, Other Expenses, $174.40, and Collection of Taxes, Other Expenses, $660.42.
The jury found defendant guilty on all four counts. He was sentenced to pay a fine of $100 on the first count, and $50 on the fourth count, and sentence was suspended on the second and third counts.
Defendant challenges his convictions on several grounds. They may be summarized as follows: (1) he was entrapped into waiving immunity and testifying voluntarily before the grand jury, (2) the trial judge's charge was erroneous; (3) the indictment was constitutionally defective in that others guilty of similar violations were not indicted; (4) the prosecution was politically motivated, and (5) there should have been a judgment of acquittal because (a) no criminal intent was proven and (b) "defendant's actions resulting in an indictment for violation of R.S. 40A:4-57 and R.S. 2A:135-5 were nevertheless lawful under R.S. 40A:4-58 and 59." We consider them in inverse order.
The core argument advanced by defendant is that the overexpenditure prohibited by law is the overexpenditure of the total budget rather than a line item thereof, and that he was guilty of no crime since the transfers made on December 29, 1965 added sufficient funds to each overexpended account to make up for the alleged overexpenditure. Implicit in this argument is the contention that municipal obligations may be incurred and paid for notwithstanding that they result in the overexpending of the line item to which they are chargeable, in the expectation that at the year's end there will be unexpended sums in other line items which may be transferred to the overexpended accounts, or, alternatively, that illegality in the overexpenditure of a line item is cured by a subsequent transfer of funds from other line items.
We are satisfied and hold that the Local Budget Law, N.J.S.A. 40A:4-1 et seq., was intended to control municipal expenditures by line item. N.J.S.A. 40A:4-57 provides that, with certain exceptions not here relevant, no officer, board, body or commission shall during any fiscal year (1) *450 spend any money, (2) incur any liability, or (3) enter into any contract which by its terms involves an expenditure of money, for any purpose for which no appropriation is provided, or in excess of the amount appropriated for that purpose. The line item designates the purpose of the expenditure. A contract made in violation of this section of the statute is declared null and void and payment thereon is enjoined. Emergency appropriations are strictly limited. N.J.S.A. 40A:4-46 to 55.17. An unexpended balance in an appropriation may be cancelled by resolution, N.J.S.A. 40A:4-60, or transferred to another line item under certain circumstances. N.J.S.A. 40A:4-58. It is clear that the legislative restrictions imposed by N.J.S.A. 40A:4-57 would be of doubtful effectiveness were their application to be limited to the total budget, as distinguished from line item appropriations. A reading of State v. Brom, 78 N.J.L. 222, 224 (Sup. Ct. 1909), decided under section 31 of the Crimes Act, L. 1898, c. 235, p. 803, from which N.J.S.A. 2A:135-5 was derived, would appear to confirm this interpretation.
N.J.S.A. 40A:4-57 superseded R.S. 40:2-29. The basic idea behind it is that the municipality shall make ends meet within its fiscal year; hence, budget expenditures during a fiscal year should not depart from the budget of that year. 405 Monroe Co. v. City of Asbury Park, 40 N.J. 457, 470 (1963). Here the State's proofs adequately supported the conclusion that there had been such overexpenditures prior to the December 29 transfers.
These overexpenditures were not rendered legal by the transfers from other accounts. N.J.S.A. 40A:4-58, which authorizes such transfers, provides:
a. Should it become necessary, during the last 2 months of the fiscal year, to expend for any of the purposes specified in the budget an amount in excess of the respective sums appropriated therefor and there shall be an excess in any appropriations over and above the amount deemed to be necessary to fulfill the purpose of such appropriation, the governing body may, by resolution setting forth the facts, adopted by not less than 2/3 vote of the full membership thereof, *451 transfer the amount of such excess to those appropriations deemed to be insufficient * * *. [Emphasis added]
It is clearly worded and does no more than furnish the means whereby under certain conditions the amount budgeted in a given account may be augmented by the excess remaining in another account. The right to transfer from an account depends upon whether there is an unexpended balance, and is limited to the amount of such balance. Here, as noted, the transfers from two line items voted by the majority of the council involved sums greater than the excess remaining in them.
Defendant also urges that criminal intent was the necessary element of the offenses charged and, in the absence of proof thereof, he "was wrongfully adjudged guilty of a crime." The trial judge properly instructed the jury that criminal intent was an essential element of the common law offense of misconduct in office, N.J.S.A. 2A:85-1, here based upon defendant's violation of N.J.S.A. 40A:4-57 and 58 (first and second counts). State v. Begyn, 34 N.J. 35, 49-50 (1961). However, to establish intent it was not necessary to adduce proofs from which it could be inferred that the defendant intended to profit or otherwise benefit from the overexpenditures. It was sufficient if there was an intent to commit the act which the law forbade, State v. Gleitsmann, 62 N.J. Super. 15, 20-21 (App. Div. 1960), and a finding that defendant's conduct was unlawful and willful would support a charge of bad faith, State v. Williamson, 54 N.J. Super. 170, 184-185 (App. Div. 1959), aff'd 31 N.J. 16 (1959).
We find the proofs adequate to establish the necessary intent. There was testimony which, if believed, established that defendant, a college graduate and successful businessman who was serving his third year as a councilman and was chairman of the council's finance committee, knew of the cited provisions of the Local Budget Law and of the penalty provided by N.J.S.A. 2A:135-5 for overexpenditures. Each *452 of the councilmen, including defendant, received a disbursement sheet monthly which showed the balance in the several accounts and, where there was an overexpenditure, that item was shown in red. Defendant knew that the red ink indicated that the account was overdrawn but nevertheless continued to vote to authorize additional payments. He testified, "I was aware that more had been spent in certain accounts than had been appropriated, and transfer in some of these cases had not been made," and "the [treasurer's] report showed that more money was spent than was budgeted in many of these accounts * * *." Additionally, the attention of the council had been directed to N.J.S.A. 2A:135-5 by a letter from the Director of Local Government which preceded the making of the transfers on which the third and fourth counts of the indictment were based. While defendant introduced evidence having a tendency to exculpate him from the charges, resolution of the fact issue thus presented was for the jury rather than the court.
As to the second and fourth counts for violation of N.J.S.A. 2A:135-5, the court charged (in the words of the statute) that, in order to convict, it was necessary that the jury find that defendant had willfully and knowingly voted for the overexpenditures. In this it was correct. It was within the competency of the Legislature to declare an act criminal irrespective of the motive of the doer. State v. Labato, 7 N.J. 137, 149-150 (1951). Here it prescribed willfulness and knowledge as the tests. Thus, the State was not required to adduce evidence to establish a corrupt motive on defendant's part as to those counts. Cf. State v. Halsted, 39 N.J.L. 402, 411 (Sup. Ct. 1877); Halsted v. State, 41 N.J.L. 552, 592 (E. & A. 1879). The proofs were adequate to support a finding, implicit in the jury's verdict of guilty, that the overexpenditures were willfully and knowingly voted.
Defendant next urges that (1) the prosecution against him was politically motivated, and (2) the course of conduct which led to the overexpenditures charge was sanctioned by customary usage, and in singling him out for *453 prosecution he was deprived of the equal protection of the law to which he was entitled under the Fourteenth Amendment. We find neither point to be meritorious. The indictment followed a general investigation of the financial affairs of the Borough of Carteret by the grand jury pursuant to an order of the assignment judge. At the most, defendant's proofs would have supported the inference that overexpenditures of local budgets had taken place in certain other municipalities but there had been no prosecutions based thereon. This is a far cry from demonstrating the proof of purposefully discriminatory enforcement necessary to establish a violation of equal protection. Snowden v. Hughes, 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1944); Boynton v. Fox West Coast Theatres Corp., 60 F.2d 851 (10 Cir. 1932). Yick Wo v. Hopkins, 118 U.S. 356, 68 S.Ct. 1064, 30 L.Ed. 220 (1886), on which defendant principally relies, is inapposite in that it involved intentional discrimination rather than mere unequal application of a statute which was fair on its face. The mere fact that a law has not been fully enforced against others does not give a defendant the right to violate it. The true issue here was not whether political considerations had played a hand in initiating the investigation which led to defendant's indictment, but whether defendant had willfully and knowingly violated the statute.
Defendant levels two criticisms at the charge  that the trial judge (1) shifted the burden of proof when the jury was instructed to determine who was "holding back or presenting excuses," and (2) wrongfully permitted the jury to consider the indictment for evidentiary purposes.
We are satisfied that the quoted excerpt did not have the effect of shifting the burden of proof to defendant. An abstract from the charge is not to be considered in isolation, but in the light of the entire charge. Where the charge as a whole is clear and correct there is no error. State v. Neff, 67 N.J. Super. 213, 221 (App. Div. 1961). The challenged excerpt is found in that portion of the charge dealing with the *454 issue of credibility. We are satisfied that that portion as a whole correctly and adequately set forth the applicable law. It was made clear to the jury, both before and after it, that the burden of proof rested upon the State at all times.
During its deliberations the jury requested a copy of the indictment. While ordinarily it would not have been error to send the indictment into the jury room, State v. Profita, 113 N.J.L. 330, 334 (Sup. Ct. 1934), aff'd on other grounds, 114 N.J.L. 334 (E. & A. 1935); State v. Begyn, 58 N.J. Super. 185, 195 (App. Div. 1959), aff'd on other grounds, 34 N.J. 35 (1961), there was an objection by counsel for defendant. The objection was sustained and in lieu thereof the trial judge summarized the various counts in the indictment for the benefit of the jury, while cautioning the jurors that the indictment was nothing more than a mere formal written charge and neither the indictment nor the allegations set out therein were evidential in any respect. We find no error. It is to be assumed that the jurors followed the court's instructions. State v. Curcio, 23 N.J. 521 (1957).
Defendant urges that the indictment was fatally defective because he was entrapped into waiving immunity and giving testimony before the grand jury, citing State v. Fary, 19 N.J. 431 (1955); State v. Sarcone, 96 N.J. Super. 501 (Law Div. 1967), and State v. Rosania, 96 N.J. Super. 515 (Law Div. 1967). He argues that he should have been advised that he was one of the targets of the grand jury's investigation and should have been advised as to his privilege against self-incrimination. This argument is wholly lacking in substance. The investigation into the fiscal affairs of the Borough of Carteret for the period named was a general one ordered pursuant to N.J.S.A. 40A:5-22. Defendant, though subpoenaed by the State, had not been called upon to testify before the grand jury. When advised that he was not to be called, he requested that he be permitted to go before the grand jury. His request was granted after he was advised of his constitutional rights by the deputy *455 attorney general in charge.[1] When he appeared before the grand jury he was again advised as to his constitutional rights; thereafter stated that he did not wish to consult an attorney and, after being warned that anything he said might be used against him in any criminal proceeding which might result from the investigation, signed the waiver of immunity. His introductory statement to the grand jury was: "Ladies and gentlemen, I appreciate your coming in here this morning and today and spending your valuable time here so that you may hear what we might consider the other side of the coin."
The record is devoid of any showing that the indictment was based on defendant's testimony before the grand jury. On the contrary, the evidence adduced at the trial consisted mostly of municipal records and supporting testimony by the borough clerk, treasurer and accountant, and the municipal accountant who had conducted the investigation by order of the court.
Our careful examination of the record satisfies us that defendant had a full and fair trial, free of error, in which the issue of his guilt or innocence was submitted to the jury in a charge which correctly delineated the issues involved and the law applicable thereto. We find no cause to disturb the verdict.
Affirmed.
NOTES
[1] A tape recording of their interview was played before the trial judge on the motion to quash the indictment.