130 N.J. Super. 234 (1974)
326 A.2d 84
STATE OF NEW JERSEY, PLAINTIFF,
v.
CHARLES SAUNDERS, DEFENDANT.
Superior Court of New Jersey, Essex County Court, Law Division.
September 27, 1974.
*236 Mr. Robert A. Baime, attorney for defendant (Mr. Alan Silber, attorney, of counsel and on the brief, argued the motion).
Mr. David L. Rhoads, Assistant Prosecutor, argued the motion for plaintiff (Mr. Joseph P. Lordi, Essex County Prosecutor, attorney).
BEDFORD, J.C.C.
Defendant, along with a companion, was indicted for rape, armed robbery and assault with intent to rape. Defendants had picked up the two complaining witnesses at an early morning hour on Springfield Avenue, *237 Newark, driven to the A & P parking lot on Freling-huysen Avenue, and engaged in sexual activities. Afterward, having ejected the girls from the car, complaints were lodged with the police by the apparently willing victims. The jury verdict indicated acceptance of the defendant's version, sketched above, and resulted in an acquittal on all counts of the indictment.
During defendant's testimony all of the elements of fornication were freely admitted and the court, on its own initiative, charged fornication as a lesser included offense in addition to charges in the indictment. The jury returned a verdict of guilty as to both defendants. Defendant Saunder's attorney made timely objection to the court's charge, contending that the fornication statute was unconstitutional under recent decisions of the United States Supreme Court. N.J.S.A. 2A:110-1 reads as follows:
Any person who commits fornication is guilty of a misdemeanor, and shall be punished by a fine of not more than $50, or by imprisonment for not more than 6 months, or both.
Following the verdict the court imposed a fine of $50 on defendant; his co-defendant, who had spent seven months in jail awaiting trial on the charges, was sentenced to "time spent." A motion for judgment of acquittal was filed and the court agreed to a hearing to challenge the constitutionality of N.J.S.A. 2A: 110-1. Defendant sought the opportunity to introduce testimony in order to meet the objection to a lack of record raised by the court in State v. Clark, 58 N.J. 72 (1971). In that case our Supreme Court declined to declare the fornication statute unconstitutional in the absence of a full record. Testimony was thereafter taken on behalf of defendant Saunders which is summarized in the following paragraphs.
Morton Hunt, a free-lance author who has written several articles on psychology and human sexuality, was the first to testify. His latest book, Sexual Behavior in the 1970's, has recently been published by Playboy Press (Chicago, 1974).
*238 He testified that since the Kinsey reports (Sexual Behavior in the Human Male (1948); Sexual Behavior in the Human Female (1953)  as reflected in Hunt's statistics and surveys  there has been a marked increase in "permissiveness with affection" throughout society, and that the attitude of the public has dramatically shifted to tolerance of sexual intercourse between unmarried, consenting adults. He further testified that the largest portion of the population is under 35 years of age, and that premarital intercourse is generally acceptable to them, particularly where there is some affection. He projects that in ten years it will not only be the majority opinion, but the overwhelming opinion. Hunt admitted that his questionnaire did not mention the illegality of fornication, but only asked for attitudes toward it.
Gary Skoloff has been a member of the New Jersey Bar since 1959, specializing in matrimonial law for the last seven years. He testified that in his divorce work he came across many instances of violation of the adultery and fornication statutes, and that these were brought to the attention of the matrimonial judge, either in testimony or in conferences in chambers. He knew of no instance where a judge has remanded a party for prosecution. He admitted that marital matters are bitterly contested and stated that police have tended to discourage filing of such complaints against the spouse.
Dr. Richard Green is a professor of psychiatry specializing in human sexuality. His qualifications in the field are impressive. He testified that sexual tensions, resulting from the proscription of sexual activity, whether moral or legal, result in personality problems traceable to those proscriptions. Guilt feelings and anxiety are created, with residual psychological and sexual problems that are sometimes manifested many years later.
In addition to the oral testimony of Hunt, Skoloff and Green, there was admitted, without objection, and affidavit of Linda R. Blumkin, a member of the bar of New York and *239 admitted to practice in the federal courts. She was awarded the LL.M. degree by Harvard University in June 1973, based on a study involving a questionnaire survey sent to 1177 chief prosecutors, members of the National District Attorney's Association, with 426 responses. The subject matter of the questionnaire was fornication and cohabitation prosecutions in their respective jurisdictions. The eight New Jersey responses indicated that in the period from 1968 to 1972 there were 16 prosecutions (nationwide: 3241). Her conclusion was that "The New Jersey pattern  with no enforcement by most prosecutors, and some enforcement by others  was typical of prosecutors throughout the United States. Prosecutors who enforce these laws at all tend to do so repeatedly (although with varying frequency from prosecutor to prosecutor)." She further found that enforcement activities were not directed against racial or ethnic groups in proportion to their representation in their general population. Prosecution of males exceeded that of females (New Jersey prosecuted a greater percentage of males than the national average, ten cases involving white couples with two involving black). Prosecutors favored a repeal of these statutes in a ratio of seven to one. Ms. Blumkin concluded that the majority of prosecutors apparently view fornication and cohabitation as crimes which are, in a sense, punishable by marriage. She admitted that it was impossible to secure a random sample in her survey, thus making it impossible to tell to what extent the respondents are representative of the United States as a whole.
Defendant further submitted the results of a questionnaire addressed to municipal courts and police departments in Essex County. The 14 responding clerks of municipal courts and police departments stated there were no complaints or accusations of fornication filed in the last ten years in their respective towns, leaving eight who did not respond.
A statewide query of prosecutors brought responses from six counties, two of which indicated some complaints or accusations, but no indictments. One indicated it was against *240 the prosecutor's policy to bring an action against consensual adult acts. The State Division of Criminal Justice's response stated that that office "has no experience in fornication."
The court finds that there is still activity by prosecutors, both nationwide and in New Jersey, in pursuing the enforcement of statutes proscribing certain consensual adult sexual behavior, although the evidence would indicate that it is limited.
While accepting that, medically or psychologically, there is a basic human drive and need for sexual expression, this does not exclude it from the area of legislative control or regulation.
The court accepts the results of Morton Hunt's questionnaire and his testimony as a valid sampling of attitudes, and the conclusions he draws therefrom. However, the constitutionality of a statute is not to be determined by a Gallup or Harris poll, taken periodically, reflecting a majority or minority view of the legislation.
The main issues raised by defendant in attacking the constitutionality of the statute are: (1) discriminatory enforcement, in violation of the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the U.S. Constitution; (2) the invasion of the right to privacy under the Fourth and Ninth Amendments to the United States Constitution, and (3) violation of the Establishment Clause of the First Amendment to the Constitution.
The New Jersey Supreme Court has recently reviewed the statute in question in two cases, State v. Lutz, 57 N.J. 314 (1971), and State v. Clark, supra.
In Lutz the court rejected the argument based on the right to privacy under the First Amendment, but expressed concern with the problem of uneven enforcement of the statute. The court said:
We, of course, recognize that total enforcement of a criminal code is impossible, particularly with respect to lesser crimes. Nonetheless the problem may be different if a statute is consciously ignored and is invoked only in response to circumstances unrelated to *241 the elements of the proscribed offense. There being no record upon the broader subject of erratic enforcement, we will not pursue it further. In any event, we suggest the offense, if it is to remain, might well be downgraded by statute to a disorderly persons offense [57 N.J. at 315]
While it is true that there have been limited prosecutions for fornication, the very nature of the crime makes enforcement difficult. Most violations of laws regulating sexual conduct are performed furtively, with no witnesses other than the actors, both of whom would be subject to prosecution.
Defendant contends that because of the limited prosecutions for fornication he is deprived of equal protection of the law and due process of law to which he is entitled under the Fourteenth Amendment. In order to show a violation of these constitutional rights defendant must demonstrate and prove the purposeful discriminatory enforcement. State v. Boncelet, 107 N.J. Super. 444 (App. Div. 1969). As the court said in State v. Savoie, 128 N.J. Super. 329, 337 (App. Div. 1974), there must be a showing that "selection was deliberately based on some unjustifiable standard; selectivity by itself absent a showing of invidious and arbitrary classification does not constitute a violation of constitutional equal protection rights." Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962); Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1943).
The court finds that while there has been limited prosecution for fornication in New Jersey no showing of purposeful discriminatory enforcement has been established.
The other New Jersey Supreme Court case dealing with fornication, State v. Clark, supra, involved the prosecution of a welfare client. Defendant Clark had filed for financial assistance from the Welfare Department of Paterson, and was told that before she could receive benefits she must file a bastardy complaint against Charles Barr, the other defendant, who she claimed was the parent of her children. Bastardy proceedings were instituted and a hearing was held, at which time it came to the judge's attention, by admission, *242 that both parties had engaged in sexual intercourse outside the bonds of marriage. The judge directed that a complaint charging fornication be filed against them, which resulted in conviction of both. The convictions were reversed on the grounds of the Fifth Amendment protection against self-incrimination because defendants had not been warned of their rights by the Welfare Department or later by the judge. The court stated:
The approval or disapproval of sexual promiscuity is not involved here. Basically we are concerned with whether needy children should be deprived of public assistance because their mother will not seek it for fear of prosecution for fornication. This means punishment of the children for the immorality of their mother  a result inconsistent with the high purpose of the public welfare program. To inject fear of self-incrimination and to allow it to impede or render impossible accomplishment of the public purpose of caring for destitute children is unwise and socially undesirable [58 N.J. at 92]
The court, in considering the issue of the right of privacy under the United States Constitution, would not pass on that point "in the absence of a factual record."
Defendant raises the issue of the right to privacy under the Fourth, Ninth and Fourteenth Amendments to the United States Constitution because of the recent pronouncements surrounding this concept by the United States Supreme Court.
That there exists a constitutional right to privacy can no longer be challenged. Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and authorities cited therein. The right to privacy arises from the prenumbras of the Bill of Rights, especially the Fourth and Ninth Amendments, and has been made applicable to the states by the Fourteenth Amendment to the United States Constitution.
However, this right is not absolute and its parameters are continually being defined. See Meerwarth v. Meerwarth, 128 N.J. Super. 285, 289 (Ch. Div. 1974).
*243 Defendant argues, in light of the recent opinions in Roe v. Wade, supra, and Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), which have expanded the right to privacy from the married individual to the unmarried individual, that New Jersey cases holding the fornication statute constitutional (State v. Lutz, supra, and State v. Clark, supra) should be re-examined.
Defendant argues that the right to privacy inures to every citizen, whether married or single. However this right is circumscribed by the test stated in Roe v. Wade, supra. The right to privacy does not go so far as to give one "an unlimited right to do with one's body as one pleases" (whether married or single), but it may be regulated by the State if such regulation is justified by "a compelling state interest."
In State v. Barr, 110 N.J. Super. 365, 368 (App. Div. 1970), (Barr's conviction was reversed in State v. Clark, supra, on other grounds previously discussed) the court referred to Justice Goldberg's concurring opinion in Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), as follows:
A state may significantly encroach on a person's liberty upon showing a subordinating state interest which is compelling or that the enacted law is necessary to the accomplishment of a permissible state policy. Id. at 497, 85 S.Ct. 1678. It was in this reference that the Justice stated, "The State of Connecticut does have statutes, the constitutionality of which is beyond doubt, which prohibit adultery and fornication." [at 498, 85 S.Ct. at 1689; emphasis supplied].
As set forth in Clark, the State has a proper and continuing interest in preventing the birth of illegitimate children, possible by-products of fornication.
Health is also a legitimate sphere for regulation by the State, which may place limitations on the right to privacy where the individual and general public's health is involved. See Roe v. Wade, supra, and Jacobson v. Massachusetts, 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643 (1905). *244 There is a rampant problem with venereal disease in our area. See Today's VD Problem 1974 published by the American Social Health Association, containing nationwide statistics on the prevalence of such diseases. It is also to be noted that the State regulates the right of marriage by compelling a blood test for venereal disease, and a certificate must show "the applicant [for a marriage license] either is not infected with syphilis or is not in a stage of that disease which is likely to become communicable." N.J.S.A. 37:1-20 et seq.
Defendant also contends "the only basis and purpose for the fornication statute is the establishing of prevailing notions of religious morality." It is true that some of the origins of the statute may be based on religious attitudes prevalent at the time of its adoption in New Jersey (1796). But the existence of those religious motivations do not, per se, make the statute violative of the Establishment Clause. Countervailing weight must be given to current secular purposes.
In order to determine whether the statute (N.J.S.A. 2A:110-1) violates the First Amendment Establishment Clause the two-pronged test as first enunciated in Abington School District v. Schempp, 374 U.S. 203, 222, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963), should be applied. In that case, the school prayers decision, the test was set forth as follows: "* * * to withstand the strictures of the Establishment Clause there must be a secular legislative purpose and a primary effect that neither advances nor inhibits religion."
Compelling secular purposes, birth of illegitimate children and venereal disease, have been set forth above in answer to the argument for the right to privacy. The prohibition of fornication by the State neither advances nor inhibits religion and therefore is not a violation of the First Amendment to the United States Constitution.
The court holds that N.J.S.A. 2A:110-1 is constitutional under the First, Fourth, Ninth and Fourteenth *245 Amendments to the United States Constitution, and leaves it to the Legislature to determine whether the law should be altered, by downgrading as suggested in State v. Lutz, supra, or abolished as suggested by its absence in the Model Penal Code, now pending before it. "* * * [i]t is for that body, not the courts, to change the law if it chooses to subscribe to a more liberal pattern of sex behavior with young females." State v. Moore, 105 N.J. Super. 567, 571 (App. Div. 1969).
The motion for judgment of acquittal is denied.