STATE OF NEW JERSEY, PLAINTIFF, v. CLOSTER VIL-
LAGE, INC., SIDNEY V. STOLDT, CARL C. LOW AND
LOUIS ANTOVEL, DEFENDANTS.

Bergen County Court
Law Division

Decided July 26, 1954.

568

*Mr. Guy W. Calissi,* Bergen County Prosecutor (*Mr. Ralph L. Fusco,* Deputy Attorney-General appearing) for the State of New Jersey.

*Mr. Joseph H. Gaudielle,* attorney for the defendant Sidney V. Stoldt.

*Messrs. Major and Carlsen (Mr. James A. Major,* appearing) for the defendant Carl C. Low.

*Mr. Max L. Rosenstein,* attorney for the defendant Louis Antovel.

O'DEA, J. C. C. By separate motions consolidated for argument and disposition, the defendants seek to dismiss nine indictments against them returned by the Bergen County Grand Jury, September Term 1951, filed June 12, 1952, under which the defendants pleaded not guilty when arraigned June 3, 1953. The motions to dismiss the indictments were noticed for August 20, 1952, but not heard until July 20, 1954.

The same defendants are named and charged in the nine indictments as "Closter Village, Inc., a corporation of the State of New Jersey, Sidney V. Stoldt, Carl C. Low and Louis Antovel, they, then being officers and directors of said Closter Village, Inc., a corporation of the State of New Jersey * * *"

Seven of the indictments, Nos. 17337, 17338, 17341, 17342, 17343, 17344, and 17345, are each for violation of *R. S.* 2:124–16, varying only as to the complaining witnesses, lot and block numbers, and amount of money. The defendants are charged:

"* * * being then and there contractors, and that as such they did enter into a contract with (names of complaining witnesses) for the construction of a certain dwelling house upon certain lands known as Lot (number) Block (number) on 'Map of Closter Village, Section 4, Closter, Bergen County, N. J.' and that they did receive from the said (names of complaining witnesses,) purchasers under said

contract, the sum of $(amount) in lawful money of the United States of America for the purpose of paying all claims due or to become due and owing from them the said contractors, for labor and materials incident to the construction of the dwelling house aforesaid, but despite the specific purpose for which the aforesaid sum of $(amount) was placed in their hands, the said Closter Village, Inc., a corporation of the State of New Jersey, Sidney V. Stoldt, Carl C. Low, and Louis Antovel, being then and there officers and directors of Closter Village, Inc., did wilfully and unlawfully appropriate, or consent thereto, the aforesaid monies for purposes other than the payment of labor and material due or to become due from them for the construction of the aforesaid dwelling house prior to the payment of all claims and charges, for the payment of which such funds constitute a trust fund under the statute in violation of *R. S.* 2:124–16 * * *"

These seven are referred to as the trust fund indictments.

Two of the indictments, Nos. 17339 and 17340, are each for violation of *R. S.* 2:124–11 charging the defendants,

"* * * being then and there the agents of (names of the complaining witnesses,) and as such entrusted with the care of certain moneys then and there the properety of the said (the complaining witnesses,) they did then and there fraudulently take and convert to their own use the sum of $(amount), moneys of the said (complaining witnesses) and lawful money of the United States of America, with intent to deprive the said (complaining witnesses) thereof, in violation of *N. J. S.* 2:124–11, * * *"

These two are referred to as the conversion indictments.

All the indictments date the acts complained of within the period August 22, 1950 to July 1, 1951.

*R. S.* 2:124–16 provides:

"All moneys received by a contractor from the owner or mortgagee of real estate or any leasehold or other interest therein, while a building is being erected, constructed, completed, altered, repaired or having an addition made thereto, are hereby declared to be trust funds in the hands of such contractor to be applied to the amount of all claims due or to become due and owing from such contractor to all persons furnishing labor or materials to him for the erection, construction or completion of the building or any alteration, repair or addition thereto, and any other reasonable and necessary charge in connection with the carrying on and completion of the work on the building. Any contractor or any officer, director or agent of

572

such contractor who pays or consents to the appropriation of such funds for any other purpose prior to the payment of all claims and charges for the payment of which such funds constitute a trust fund as above provided, shall be guilty of a misdemeanor."

Under the constitution, statutes, rules of court and judicial decisions which have made a departure from the old common law concepts of testing the validity of indictments with technical niceties, an indictment must be sustained at the trial level if it serves the primary purpose to inform the defendant of the nature of the offense charged against him, so that he may properly prepare his defense, and shields him from another indictment for the same offense. *State v. Lefante*, 12 *N. J.* 505 (1953). Under the rules and the decisions, the indictment should state the essential facts constituting the offense charged. *R. R.* 3:4–3. Whatever facts are essential to the gravamen of the indictment must be set out particularly, but minor circumstances which are not vital elements of the offense need not be set out in the indictment. Statutory offenses charged in language substantially the same or of the same import as that required by the statute is sufficient where it fully acquaints the accused with the nature of the cause of accusation against him as required by the constitution, statutes and rules. An indictment will not be nullified merely because it is inartfully or awkwardly worded, or disorderly in arrangement of its allegations. *State v. Lombardo*, 20 *N. J. Super.* 317 (*App. Div.* 1952). Nor is it required to possess literary finesse or grammatical nicety. *State v. Western Union Telegraph Co.*, 13 *N. J. Super.* 172 (*Cumberland Cty. Ct.* 1951).

In determining the validity of indictments under statutory offenses the trial

"* * * courts are especially called upon to overlook slight technical objections, to disregard popular prejudices and to so construe statutes and adjudge the indictments that the avowed objects of the legislature for the public good may be respected and enforced. To this end an indictment in substantial compliance with the statute upon which it is framed should not be deemed insufficient, however defective it may be in mere matters of form which cannot prejudice

the rights of the accused." *Zumhoff v. State*, 4 *G. Greene, Iowa* 526, 531. *Joyce, Indictments* 433–4.

The judicial decisions and rules bind the courts

"\* \* \* to put an end to the determination of criminal proceedings on the technicalities that so often characterized criminal proceedings at common law and that tended to bring the law and the administration of justice into disrepute." *State v. Lefante*, 12 *N. J.* 505, at *page* 510 (1953).

■ Further, our courts have repeatedly held that the discretionary powers of the trial court to quash indictments should not be exercised unless the indictments are clearly and palpably wrong, especially where the statute of limitations has run. *State v. Lehigh Valley Railroad Co.*, 90 *N. J. L.* 372 (*Sup. Ct.* 1917); *State v. Winne*, 12 *N. J.* 152 (1953); *State v. Weleck*, 10 *N. J.* 355 (1952); *State v. Lombardo*, 18 *N. J. Super.* 511 (*Cty. Ct.* 1952), affirmed 20 *N. J. Super.* 317 (*App. Div.* 1952).

■ In the trust fund indictments the defendants are clearly apprised of all the essential facts of the statutory offense charged against them. The intention of the Legislature and clear purpose of the statute (*R. S.* 2:124–16) is to afford some protection through the exercise of the police power of the State against building contractors who receive money for the construction, repair or alteration of buildings from diverting such moneys to other uses prior to the payment of claims for labor, materials, or other charges in connection with the work on the building. The evil within the protection of the act is the diversion of construction money before payment of all construction claims. The essential facts of the statutory offense, the gravamen of the indictment, are the payment of money to a contractor by an owner for the construction of a building which thereupon become trust funds for the payment of construction claims and the diversion of such funds to other purposes by the contractor or an officer, director or agent of such contractor prior to the payment of all claims for which such funds are constituted a trust fund

by the statute. *State v. Bleichner*, 11 *N. J. Super.* 542 (*App. Div.* 1951).

The defendants contend the trust fund indictments are fatally defective for the reasons:

(1) The indictments charge only that the money was paid for labor and materials and may have been used for payment of others connected with the work of construction, but the failure to pay such others is not charged in the indictments.

(2) The statute does not apply to contract purchasers.

(3) There is no allegation that the moneys were paid during actual construction.

(4) The statute was repealed January 1, 1952, after the offense but before the indictment.

 The first contention of the defendants constitutes a technical objection that the indictment should charge the defendants received the construction money for all the classes of construction claimants named in the statute and failed to pay such trust money in discharge of each of all such classes so named. While the construction money paid to the contractor becomes a trust fund for all construction claims, a liberal construction of the allegations in the indictment that the moneys were paid to the contractor for "labor and materials incident to the construction of the dwelling" certainly constitutes such moneys trust funds in the hands of the contractor under the statute. But this objection of the defendants fails for the reason that the indictment alleges the defendants diverted such funds to another use "prior to the payment of *all claims and charges* (italics added), for the payment of which such funds constitute a trust fund under the statute * * *" An indictment may not be nullified for disorderly arrangement, poor wording or error in form, so long as it properly states the essential facts and appraises the defendants of the offense charged. *State v. Lombardo, supra.*

 The intent and purpose of the statute for police protection of construction money paid to contractors by owners of land for the construction of buildings thereon against diversion prior to payment of construction claims

must be considered in weighing the defendants' second objection. The type, class, or condition of ownership of the land could not have been within the intent of the Legislature. Nor is it spelled into the purpose of the act by the general unlimited use of the word "owner." The term "owner" as used in the statute does not connote the use of the word in any technical sense. Its use must therefore be according to its general meaning. The scope of the general term owner as applied to real property interests varies from the holder of absolute title in fee simple to a mere occupant, and such use is descriptive of all the various interests and rights in realty, including any person who has an equitable right to or interest in land under contract of sale. 73 *C. J. S., Property*, § 13, *p.* 185; *Martin v. State Insurance Co.*, 44 *N. J. L.* 485 (*Sup. Ct.* 1882). Hence, the unqualified, unlimited use of the word "owner" in the statute cannot be found to exclude "purchasers * * * under contract" to purchase the land, particularly where the land purchase contract includes the construction of a dwelling thereon by the contractor, as charged in the indictments.

Defendants' third objection would require a strict construction of the phrase of the statute providing for payment of the money to the contractor "while a building is being erected, constructed, completed, altered, repaired, or having an addition thereto." Under such an interpretation all monies paid to a building contractor for construction of a building at the closing of the contract and before a spade of earth is removed from the site toward actual construction would be excluded from the trust fund created under the statute for construction monies paid to contractors for labor, material, and other work connected with the construction. Again, the intent and purpose of the statute must be taken into consideration to determine whether the time of payment of the construction money to the contractor is an essential element of the offense or whether the essential element of the offense meant and intended is the payment of money to a building contractor for the purpose of construction of a building for the owner. The latter reason seems to be the

clear intent and purpose of the act as written by the Legislature. Again, the evil within the protection of the act is the diversion of construction monies before the payment of construction claims. Such a construction of the act is confirmed by the new wording of the present act, *N. J. S.* 2A :102–10, which reads:

"All moneys received by a contractor from the owner or mortgagee of real estate *for the purpose* (italics added) of having a building erected, constructed, completed, altered, repaired, or added to, are trust funds in the hands of the contractor."

Therefore, it is not an essential element of the offense that the construction money be paid to the contractor during actual construction, but if paid under the construction contract "for the purpose of paying all claims due or to become due and owing from them, the said contractors, for labor and materials incident to the construction of the dwelling house aforesaid * * *," as charged in the indictment, it is a sufficient charge of the essential facts to sustain the indictment.

The main objection of the defendants to the conversion indictments is the contention that they were charged as agents of the complaining witnesses in the same indictments where they were named as officers and directors of the defendant corporation. The defendants argue they could not at once act as officers and directors of the corporation and serve as agents of the complaining witnesses.

The conversion indictments under *R. S.* 2 :124–11 name the corporate and individual defendants separately, describing the individuals as officers and directors of the corporate defendant. All are charged, in the charging part of the indictments, as agents of the complaining witnesses interested with the care of certain moneys, the property of the complaining witnesses, so that the single charge against them each individually as agents of the complaining witnesses and not as agents of the corporate defendant is clear, within the requirements of the statute and therefore must be sustained.

In their contention that all the indictments are

illegal on the ground *Title* 2 of the *Revised Statute* was repealed on the adoption of *Title 2A,* January 1, 1952, the defendants have overlooked *R. S.* 1:1–15 which provides:

"No offense committed, * * * previous to the time of the repeal or alteration of any act * * * heretofore or hereafter enacted, shall be discharged, released or affected by the repeal or alteration of the statute under which such offense * * * was incurred, unless it is expressly declared in the act by which such * * * offense * * * already committed or incurred shall be thereby discharged * * *; and indictments, prosecutions and actions for such offenses * * * already committed or incurred shall be commenced or continued and be proceeded with in all respects as if the act * * * had not been repealed * * *"

Therefore, under *R. S.* 1:1–15 the repeal of the statute under which the offense was charged does not preclude the indictment and prosecution for the offense after the repeal. *State v. Crusins,* 57 *N. J. L.* 279 (*Sup. Ct.* 1894).

The indictments are found in substantial compliance with the statutes on which they are framed, defective only in mere matters of form, which cannot prejudice the rights of the accused who are amply protected and apprised of the essential facts of the offenses charged against them and therefore deemed sufficient in law.

The motions to dismiss the indictments are denied.