54 N.J. Super. 170 (1959)
148 A.2d 610
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WILLIFORD T. WILLIAMSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 10, 1958.
Decided February 16, 1959.
*174 Before Judges CONFORD, FREUND and HANEMAN.
Mr. Julius E. Kramer argued the cause for defendant-appellant (Messrs. Chandless, Weller and Kramer, attorneys).
Mr. William C. Brudnick, Special Assistant Prosecutor, argued the cause for plaintiff-respondent (Mr. Guy W. Calissi, Bergen County Prosecutor, attorney).
The opinion of the court was delivered by CONFORD, J.A.D.
Defendant is and for some time past has been City Manager of the Borough of Fair Lawn. He was indicted by the grand jury of Bergen County for misconduct in office and was subsequently granted leave to appeal from an order of the Law Division denying his motion to quash the indictment.
The appeal projects for our attention several distinct grounds of assault upon the true bill. Proper consideration of the merits of the appeal requires setting forth the substantive part of the indictment in its entirety. (The interpolations *175 of numbers and letters in brackets are by the court.)
"1. WILLIFORD T. WILLIAMSON on or about the 11th day of August, 1953 and from thence continuously to and including the 24th day of January, 1956, in the Borough of Fair Lawn, in the County of Bergen aforesaid, and within the jurisdiction of this court, was, and still is, a public officer, to wit, Municipal Manager of the Borough of Fair Lawn, a municipal corporation of the State of New Jersey in the County of Bergen aforesaid, duly appointed and qualified to and for the said public office.
2. That at all times hereinabove stated, the said WILLIFORD T. WILLIAMSON as such Municipal Manager of the Borough of Fair Lawn aforesaid, was charged among other things, with [1] the public duty of using all lawful, proper, reasonable and effective means and diligence in complying with the laws of the State of New Jersey in the awarding of contracts and work and the purchasing of materials for the Borough of Fair Lawn and to refrain from entering into any contract as chief executive official and chief administrative official of the municipality of the Borough of Fair Lawn for the doing of any work and for the furnishing of labor and materials, where the sum to be expended exceeded the sum of $1,000.00 unless there was first public advertisement for bids therefor and an awarding of the contract to the lowest responsible bidder as provided by law (N.J.S. 40:50-1), and [2] the duty not to promise to award any contract as chief executive and chief administrative official of the municipality for his department or the Borough of Fair Lawn under an agreement or understanding that he would act in any particular manner with reference to the affairs of the Borough of Fair Lawn, and [3] the duty to render public service to the Borough of Fair Lawn to the best of his ability and uninfluenced by motives adverse to the best interests of said Borough of Fair Lawn, and [4] to refrain from negotiating contracts for the Borough of Fair Lawn in violation of the laws of the State of New Jersey.
3. That the public duties aforesaid, at all times herein mentioned, were enjoined by law upon him, the said WILLIFORD T. WILLIAMSON, and that the said WILLIFORD T. WILLAMSON was, vested with full power and lawful authority for the proper exercise of the said duties so enjoined upon him, the said WILLIFORD T. WILLIAMSON, all of which he then and there well knew.
4. That, nevertheless, the said WILLIFORD T. WILLIAMSON, being such public officer, as aforesaid, and well knowing the premises aforesaid, but disregarding the public duties so by law enjoined upon him, as aforesaid, then and there and at all times hereinabove mentioned, [1] continuously, unlawfully and willfully did fail, omit and neglect to perform the duties so enjoined upon him, and then and there and at all times herein mentioned, continuously, unlawfully and willfully did fail, omit and neglect the public duty of using all *176 lawful, proper, reasonable and effective means and diligence in complying with the laws of the State of New Jersey in the awarding of contracts, work and materials for the Borough of Fair Lawn in the purchasing and supplying of fill for Borough purposes, road improvements, storm drain improvements, and divers others types of work performed within the Borough of Fair Lawn, but, on the contrary, did [a] continuously, unlawfully and willfully, and at all of the times herein mentioned, award contracts, work, and the purchasing of materials for the Borough of Fair Lawn without complying with the laws of the State of New Jersey, and then and there and at all times herein mentioned, continuously, unlawfully and willfully did fail, omit and neglect his public duty of refraining from entering into any contract on behalf of his department and the Borough of Fair Lawn for the doing of any work and for the furnishing of labor and materials, where the sum to be expended exceeded the sum of $1,000.00, unless there was first public advertisement for bids therefor, and an awarding of the contract to the lowest responsible bidder pursuant to law, but [b], on the contrary, he willfully and deliberately circumvented and disregarded his public duty and so arranged and split up the contracts by way of purchase orders in sums of less than $1,000.00, although in fact the work to be awarded and the sum to be expended therefor exceeded the sum of $1,000.00, and [c] that he willfully and deliberately circumvented and disregarded his public duty and awarded job contracts by way of purchase orders in excess of $1,000.00, and then and there and at all times herein mentioned, continuously, unlawfully and willfully did fail, omit and neglect the public duty of not negotiating and promising to award a contract for work, labor and materials under an agreement or understanding that he would act in any particular manner with reference to the affairs of the Borough of Fair Lawn, but, on the contrary, he [2] did willfully and deliberately negotiate, arrange and promise that he would award the contract for purchasing and supplying of fill for Borough purposes, road improvements, storm drain improvements, and divers other types of work to Home Owners Construction Co., a corporation of the State of New Jersey, Frank Toriello & Sons, Inc., a corporation of the State of New Jersey, Sanitary Construction Co., a corporation of the State of New Jersey, and Dominick Romeo without advertisement and awarding of the contract to the lowest responsible bidder, and without the passage of an emergency or exigency resolution of the governing body of the Borough of Fair Lawn in accordance with the laws of the State of New Jersey; contrary to the provisions of N.J.S. 2A:85-1, and against the peace of this State, the government and dignity of the same."
The bracketed numbers we have inserted in paragraph 2 identify the four separate duties which the State contends the defendant owed the public as an official, and violated; the bracketed numbers and letters in paragraph 4 identify, *177 in broad outline, the substantive acts or omissions charged to constitute defendant's violations of the duties specified in paragraph 2.

I.
Defendant's first ground of appeal requires no extended discussion. The contention is that R.S. 40:50-1, the bidding statute which the indictment charges defendant ignored and contravened, was repealed by L. 1957, c. 30, and that this operated to abrogate the criminality of any conduct by the defendant prior thereto based upon the statute cited. Den ex dem. James v. DuBois, 16 N.J.L. 285 (Sup. Ct. 1837), is relied upon. The case stands for the common-law principle that the repeal of a penal law will ordinarily carry with it immunity from punishment or prejudice for acts done or omitted contrary to that law.
There are at least two ready answers to the argument, the most obvious of which is that L. 1957, c. 30 did not, in fact, repeal R.S. 40:50-1, but merely amended it to increase from $1,000 to $2,500 the contract minimum above which the statute requires public advertisement for bids on municipal contracts and award to the lowest responsible bidder. See Sutherland, Statutory Construction (3rd ed. 1943), § 2002, p. 447. In this amendment there is not the slightest warrant for deriving the inference of a legislative intent that any offenses constituting the common-law crime of misconduct in public office, based upon the violation of duties grounded in the bidding statute (State v. Startup, 39 N.J.L. 423, 426 (Sup. Ct. 1877)), and committed prior to the amendment, were to be absolved by its adoption. The amendment evinces no more than a legislative design that the minimum contract figure should be raised from $1,000 to $2,500 insofar as prospective transactions were concerned.
Even were the 1957 act regarded as a repealer of R.S. 40:50-1, the DuBois case, supra, would not be authoritative. There, the law repealed, itself, imposed the sanctions held abolished by the repeal. See Sutherland, *178 op. cit., supra, § 2046, pp. 529, 530. Here the public bidding statute, R.S. 40:50-1, imposing the duty at the foundation of the charge of misconduct, contains no sanctions. Those are provided by N.J.S. 2A:85-1, which establishes as misdemeanors "all * * * offenses of an indictable nature at common law" not otherwise provided for by statute, R.S. 40:50-1 not being a penal law, the principle of the DuBois case does not come into play.
The disposition of this point of appeal on the bases specified makes it unnecessary to pass upon the question as to whether R.S. 1:1-15, saving from discharge any offense committed "under" a statute later repealed unless expressly discharged or released in the repealing statute, is applicable to the situation before us, as urged by the State.

II.
Defendant's second argument for reversal runs along the following lines. Under the Municipal Manager Act, R.S. 40:82-1 et seq., as amended, the municipal council, not the municipal manager, makes contracts for the municipality. The manager "recommends" measures to the council and "negotiates" contracts "subject to the approval" of the council. There was therefore no public duty imposed on the manager with respect to which there could be criminality through mere nonfeasance in the matter of ignoring the bidding statute in connection with the award or making of municipal contracts. It is argued that it would take "an act of commission as well as corruption" to render criminal the conduct of one "not charged with the performance of a public duty." In the alternative, it is contended that if the indictment is interpreted as being for malfeasance it is fatally devoid of the essential allegation of corruption, reliance being had upon what was said in State v. Winne, 12 N.J. 152, 175 (1953).
It will be helpful first to inspect the statutory specifications of a city manager's duties. So far as here material, they are stated as follows in R.S. 40:82-4:
*179 "The municipal manager shall:
a. Be the chief executive and administrative official of the municipality;

* * * * * * * *
c. Execute all laws and ordinances of the municipality;

* * * * * * * *
e. Negotiate contracts for the municipality subject to the approval of the municipal council, make recommendations concerning the nature and location of municipal improvements, and execute municipal improvements as determined by the municipal council;
f. See that all terms and conditions imposed in favor of the municipality or its inhabitants in any statute, public utility franchise or other contract are faithfully kept and performed, and upon knowledge of any violation call the same to the attention of the municipal council;

* * * * * * * *
h. Recommend to the municipal council for adoption such measures as he may deem necessary or expedient, * * *;

* * * * * * * *
The municipal manager shall in all matters act under the direction and supervision and subject to the approval of the municipal council."
From the foregoing there can be no doubt that it was within the scope of the defendant's public duties to negotiate contracts of the kind mentioned in paragraph 4 of the indictment, subject to the approval of the council. Moreover, it would have been entirely appropriate, if not, indeed, within the usual and ordinary routine of the defendant's administrative responsibilities, for him to make the arrangements for advertising and receipt of bids on contracts requiring that procedure under the statute. We think that paragraph 2 of the indictment, in its obvious undertaking to specify the public duties resting upon the defendant relevant to the charge of misconduct laid against him, does so adequately, within the framework of the statutory delineation of those duties and the over-all duty of all public officials to render honest performance of their obligations in good faith. Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433, 474-476 (1952); State v. Weleck, 10 N.J. 355, 368 (1952). But defendant stresses that paragraph 4 of the indictment, the paragraph which undertakes to charge the specific acts and omissions violative of the respective duties, *180 specifies that defendant "awarded" contracts, and that he had no statutory right to do so without council approval. The State concedes that where the indictment charges an "award" it means just that, i.e., that the defendant made awards without council approval, even though he had no legal power to do so, entirely apart from the matter of noncompliance with the bidding statute.
The question thus arises as to whether a city manager, required by law to negotiate municipal contracts subject to municipal council approval, to enforce compliance with statutory bidding requirements in the course of his administration of such transactions, and to see that all conditions imposed by any statute for the benefit of the municipality are faithfully performed, is immune from criminal prosecution for misconduct in office in effecting such contracts in the name of the municipality in willful disregard of the requirements of the bidding statutes, although applicable, merely because he misbehaved in the additional, uncharged respect of having failed to get council approval for the contracts. Defendant submits no authority to support the affirmative of that proposition; we know of none; and the idea does not commend itself on principle. Two wrongs do not make a right, especially where committed by the same individual. The wrongfulness of defendant's failure to procure council approval for contracts he negotiated does not derogate from the wrongfulness of his willful failure to see to it that there should be public advertisement and bidding in case of contracts exceeding $1,000 in amount, as charged. It is the latter accusation, solely, that concerns us in the present appraisal of the legality of this indictment.
Aside from the charge of misconduct in office in relation to the actual award of contracts in contravention of the bidding statute, it will be noted that there is a separate and distinct charge in paragraph 4 of misconduct by the defendant in having willfully arranged with and promised certain contractors that defendant would award them certain contracts without compliance with legal advertising and bidding *181 requirements. Defendant does not expressly argue that the misconduct implicit in such acts is mitigated by the separate aspect of illegality consisting of defendant's lack of legal right to make such awards. In any case, the position we have taken above would be equally responsive to such a contention, if urged.
We pause here, in passing, to notice that our dissenting colleague takes the position that there was no criminality in the charge of paragraph 4 [2] of the indictment that the defendant negotiated and promised to certain named firms that he would award contracts to them without complying with the bidding statutes. He makes the point that there is no charge of an overt act and that therefore no crime is laid to the defendant in that specific segment of the indictment. We are not going to determine the question as it was not argued by the defendant either in his brief or at the oral argument, and the matter is too important to resolve without the benefit of argument from both the State and the defendant, if raised. Moreover, aside from this portion of the indictment, enough remains to charge a crime, and the point in question can be raised at the trial and determined after argument. We take occasion here to cite, however, the disposition by the Supreme Court in State v. Weleck, supra, of the challenge to the official misconduct count there involved. That count also was based on a promise by an official. As to criminality without overt acts, see State v. Gaynor, 119 N.J.L. 582, 586 (E. & A. 1938).

III.
We next take up the contention of the defendant that it was necessary for the indictment to charge corruption, either in relation to the argument that such a charge was necessary in a context where defendant was charged with making awards of contracts, a function reserved by statute solely to the council, or on the theory that the charge here was misfeasance, an offense which is suggested in the Winne case, supra (12 N.J. at page 175), to imply corruption.
*182 The State meets this argument by the simple expedient of contending that the indictment here essentially charges, not misfeasance, but nonfeasance, citing Winne to the effect that "corruption has never been an element of nonfeasance" (ibid.). The gravamen of the misconduct charged is said to consist of the failure of the defendant to comply with the bidding statute  inaction in respect to a duty  and thus nonfeasance. It should at once be noted, however, that the gravamen of the second principal malefaction charged to the defendant in paragraph 4 is the promising to certain people that contracts would be awarded them without the prerequisites of advertisement and bidding. This is essentially action, not inaction, and qualifies under the common definition of malfeasance  "doing an act which is positively unlawful or wrong," Allas v. Borough of Rumson, 115 N.J.L. 593, 596 (E. & A. 1935). The fact that the draftsman of this indictment made a contrived effort to cast this offense in the guise of nonfeasance by postulating a public duty not to promise to award the contracts, etc., and then charging a failure to perform that duty by promising, etc., will not alter the essential nature of this aspect of the offense charged. Substance prevails over form. If it makes a difference legally whether the offense is to be regarded as nonfeasance or as malfeasance, we adjudge it is the latter.
It is, moreover, not beyond fair debate that the first aspect of the offense charged  the award of contracts without complying with the bidding statute  is to be regarded as misfeasance rather than nonfeasance, i.e., "the wrongful and injurious exercise of lawful authority, or the doing of a lawful act in an unlawful manner." Allas v. Borough of Rumson, supra. We forego the resolution of that problem in classification, as we are satisfied that the law of this State does not require an indictment expressly to charge corruption where it is based upon the common-law crime of misconduct in office, whether the misconduct is classifiable as nonfeasance, misfeasance or malfeasance, so long as it charges willful action, omission, or a combination of *183 both, in breach of a duty of public concern, by one who has accepted public office.
We are not aware of any New Jersey case in which an indictment for common-law official misconduct was held bad for failure to charge expressly that the misconduct was committed corruptly. In State v. Kern, 51 N.J.L. 259 (Sup. Ct. 1889), cited by defendant, an indictment of public officials charged them with awarding a public contract without complying with a bidding statute, "unlawfully, willfully, corruptly and with evil intent." While the court stated (at page 265) that "a willful and corrupt awarding of a contract for such work * * * would be * * * indictable at common law," the disputed questions in the case had nothing to do with the essentiality of the inclusion of "corruptly" in the indictment. Elsewhere in the opinion it is suggested that the crime is committed if the prohibited act is done "willfully and with evil intent" (at page 261), citing State v. Startup, supra (39 N.J.L. 423). That case, also involving an alleged violation by public officials of the statutory duty of securing bids upon public advertising as a basis for the award of a contract, held an indictment invalid for failure to include in the charge an allegation that the acts were done "with an evil intent, or wilfully" (emphasis added). The full context of this holding is instructive (39 N.J.L. at page 426):
"But the act here forbidden is not necessarily criminal. It is not indictable at common law without the statute. It is only criminal when it proceeds from a criminal mind, and the indictment must be framed according to common law forms. Hence, in the absence of express words in the statute, making the act criminal, there must be a charge in the indictment that the offence was committed with an evil intent, or willfully. 1 Russ. on Crimes 49; Bish. on Stat. Crimes, § 132, note 61; State v. Halsted et al., supra [39 N.J.L. 402].
It follows that these two indictments are defective in not charging that the omissions to advertise, according to the terms of the statute, were done with an evil intent, or willfully. There is no allegation of willfulness, guilty knowledge or fraudulent intent."
It is obvious that the use of the word "wilfully" is regarded as imputing the criminal state of mind requisite *184 for a charge of the common-law offense of misconduct in office and that terms like "corruptly," "with evil intent," and "fraudulent intent" are used interchangeably with "wilfully" for this purpose. Compare State v. Halsted, 39 N.J.L. 402 (Sup. Ct. 1877). It is also to be noted that these early authorities do not distinguish, for the purpose under discussion, between the branches of misconduct in office denominated nonfeasance, misfeasance and malfeasance.
The opinion of the court in State v. Winne, supra, is ambivalent as to the requirement of a charge of corruption where the indictment is for malfeasance. The point is expressly reserved (12 N.J. at page 177) as not requiring decision in that case because of the court's conclusion that the charge there was nonfeasance, as to which the court says, "Corruption has never been an element of nonfeasance" (12 N.J. at page 175). The opinion goes on, however, to make a seeming demonstration that corruption is not an essential element of misconduct in office, whether the particular misconduct be regarded as nonfeasance, malfeasance or misfeasance (12 N.J. at page 176). Indeed, the court quotes 1 Burdick, Law of Crime, 388, as authority for dispensing with the allegation of either willfulness or corruption where the pertinent statute does not require it, and then declares: "That is the view prevailing in this State" (ibid.), citing State v. Jefferson, 88 N.J.L. 447 (Sup. Ct. 1916), affirmed 90 N.J.L. 507 (E. & A. 1916). In the Jefferson case it is expressly declared that a corrupt agreement is not "of the essence of the offense of malfeasance" (emphasis added), the court asserting, in language quoted in the Winne case (12 N.J. at page 176), that the stated offense "without doubt might be as fully committed for reasons of personal favoritism or for political reasons or for no known reason at all" (88 N.J.L. at page 449).
We are therefore of the opinion that sound reason and respectable authority conduce to the conclusion that it is not necessary to charge corruption in any phase of an indictment for common-law official misconduct. It is *185 enough that there is charged willful unlawful behavior, whether by act or omission, in relation to the defendant's public duties. The situation may be otherwise where the indictment is for official conduct expressly declared a crime by statute. While ordinarily criminal intent or motive need not be charged in such a case, if the statute does not make it an element of the offense, State v. Halsted, supra (39 N.J.L. at page 411), yet statutory construction in a particular case may lead to a proper determination that corruption was intended as an essential element of the offense in question. This was the case in State v. Kuehnle, 85 N.J.L. 220 (E. & A. 1913), cited by defendant. It is not authoritative as to the matter in contention before us.
The indictment under scrutiny here is not defective for failure to charge corruption. The defendant's conduct is described therein as having been done "unlawfully and wilfully," which imports bad faith. State v. Winne, supra (12 N.J. at page 175). This is sufficient.

IV.
We pass to consideration of the most troublesome aspect of the assault upon this indictment  the one which induced us to grant leave to appeal  the plea that it is too "ambiguous and indefinite" to enable defendant to make a proper defense or to afford him protection against double jeopardy.
The difficulty here is not so much in the formulation of the controlling rules of law but in their application to particular cases  specifically, to the language of the indictment in this case.
An indictment is required to consist of a written statement "of the essential facts constituting the offense charged." R.R. 3:4-3. "An indictment grounded in a definitive statute should be so framed that it will, upon inspection, disclose not merely what nature of crime but what particular crime was intended to be charged." State v. Ellenstein, 121 N.J.L. 304, 319 (Sup. Ct. 1938). "An indictment must be sufficiently certain to give assurance *186 that the accused is not indicted for one offense and tried for another; that he may be able to prepare intelligently his defense; and that he may also be able to plead his conviction or acquittal in bar of another prosecution for the same offense." State v. De Vita, 6 N.J. Super. 344, 347 (App. Div. 1950). Examples of indictments which failed to meet the enunciated tests of specificity are to be found in the cases cited, and also in State v. Jenkins, 136 N.J.L. 112 (Sup. Ct. 1947); State v. Spear, 63 N.J.L. 179 (Sup. Ct. 1899); State v. Schmid, 57 N.J.L. 625 (Sup. Ct. 1895), and State v. Allgor, 78 N.J.L. 313 (Sup. Ct. 1909).
Examples of indictments which have been found not wanting in certainty are afforded by such cases as State v. Witte, 13 N.J. 598 (1953); State v. Closter Village, Inc., 31 N.J. Super. 566 (Cty. Ct. 1954), affirmed sub. nom. State v. Low, 18 N.J. 179 (1955); State v. McFeeley, 136 N.J.L. 102 (Sup. Ct. 1947); State v. Bolitho, 103 N.J.L. 246 (Sup. Ct. 1927), affirmed 104 N.J.L. 446 (E. & A. 1927); State v. Pennsylvania R.R. Co., 84 N.J.L. 550 (Sup. Ct. 1913). Note particularly the emphasis in State v. Low, supra: "* * * the specification of the accusation requisite in an indictment is sufficient if it informs the accused of the nature of the offense charged so as to enable him to make an adequate defense as well as to avail himself of his conviction or acquittal to avoid the threat of double jeopardy (emphasis added) (18 N.J. at page 185), as contrasted with the excerpt from State v. Ellenstein, supra. In the same tenor as the Low opinion is State v. Winne, supra (12 N.J. at page 178).
It is obvious from the common law and present provisions for requiring bills of particulars from the State "when the indictment or accusation is not sufficiently specific to enable the defendant to prepare his defense," R.R. 3:4-6, that a middle ground is postulated by the law, where, in a particular case, an indictment will lack specificity to the point of justification for ordering a bill of particulars, yet not to the point of fatal insufficiency. For whatever it may be *187 worth, one leading test for distinguishing the two situations has been stated as that: "* * * whenever the indictment is comprehensive enough to embrace the offense charged, but not specific enough to give information to which accused is entitled, a bill of particulars should be required." 4 Wharton's Criminal Law and Procedure (1957), § 1865, p. 717. Another test is projected in State v. Sullivan, 33 N.J. Super. 138, 141 (App. Div. 1954), based upon the difference in function between the requirement that the indictment allege "the essential facts constituting the offense charged," R.R. 3:4-3, and that of a bill of particulars, i.e., "to enable the defendant to prepare his defense," R.R. 3:4-6. See also State v. Gibbs, 134 N.J.L. 366, 370 (Sup. Ct. 1946); State v. Siciliano, 36 N.J. Super. 334, 341, 342 (App. Div. 1955), affirmed upon other grounds 21 N.J. 249 (1956). Assaults upon indictments for uncertainty have frequently been rejected by the courts with the suggestion that defendant's legitimate interests would be amply served by a bill of particulars. State v. Larson, 10 N.J. Misc. 384 (O. & T. 1932); State v. Morrissey, 11 N.J. Super. 298 (Cty. Ct. 1951); but see State v. Daly, 3 N.J. Super. 247, 250 (App. Div. 1949).
The multitude of kinds of criminal offenses known to the law, common-law and statutory, and the infinite variations in the factual settings within which particular criminal acts and omissions can take place, defy any judicial formularization by which it can be readily determined whether an indictment has stated all the essential facts of a particular criminal transaction. The approach must necessarily be flexible, and the answer has to rest upon the judicial application of sound common sense, having in mind both the constitutional rights of the accused, mentioned above, and the practicalities of law enforcement and criminal prosecution.
This indictment is admittedly not easy to read. Our interposition of the bracketed numbers and letters in the text, as set forth above, facilitates an analysis of it. As indicated above, we construe paragraph 2 as specifying four public duties which defendant is charged with as Municipal *188 Manager of the Borough of Fair Lawn. Paragraph 3 states that these public duties were enjoined upon the defendant during the period mentioned in paragraph 1, from August 11, 1953 to January 24, 1956. Paragraph 4 charges the respects in which the public duties specified in paragraph 2 were willfully violated by defendant; in essence, as we read the language, that he awarded municipal contracts in four specific categories, continuously over the entire period mentioned, without public advertisement and award to the lowest responsible bidder notwithstanding the amounts to be expended exceeded $1,000; in some cases outright, and in other cases by the expedient of splitting contracts exceeding $1,000 into separate purchase orders, each for less than that amount; and that all during the same period he arranged with and promised four named contractors that he would award such contracts to them without the statutory preliminaries of public advertisement and award to the lowest responsible bidder.
We address our attention to the specific respects in which defendant has claimed the indictment to be prejudicially uncertain and ambiguous. We do not deem ourselves called upon to search the indictment for other flaws not asserted by defendant.
Defendant professes not to be informed by the indictment whether it charges that every order for work or material given out by the borough between August 11, 1953 and January 24, 1956 was given out by the defendant, rather than the council, and whether in every case without bidding. As we see it, however, it is immaterial to the charge whether every order or contract placed by the borough during that period was given out by the defendant without the participation of the borough council. The indictment states only, in that regard, that the defendant did continuously, over the period of time specified, award contracts for the specific types of work and materials mentioned in paragraph 4 without complying with and in disregard of the bidding statutes although applicable. The defense against that charge does not require a specification in the indictment as to whether *189 or not some other contracts were awarded by the council, rather than the defendant, or as to whether any awards made by defendant did comply with the bidding statutes.
The State has said in its brief that the intent of the indictment was that the four named contractors mentioned in [2] of paragraph 4 as the recipients of improper promises of awards of contracts, without regard to bidding requirements, were also the contractors to whom defendant awarded contracts in contravention of bidding laws as set forth in [1][a] of that paragraph. The defendant alleges no misapprehension of the indictment as to this. If he chooses, however, he may apply to the trial court for an order that the State make this specific by a bill of particulars in order that he may be protected against any variant proof at the trial. See State v. Mowser, 92 N.J.L. 474, 479 (E. & A. 1919).
Defendant does, however, profess inability to understand whether the indictment intends to charge that every contract given these named contractors by the borough over the period of time specified was given to them "corruptly" and "without bidding." It is clear that corruption is not charged. See the discussion above. It is also clear to the court that it is neither expressly nor impliedly charged that every contract awarded to these people over the period in question was so awarded by the defendant in violation of the bidding statute. This may have been the fact, but, if so, it is immaterial to the charge made in this indictment. What we have said above in relation to the first asserted ambiguity applies as well to this.
Defendant also complains that the indictment is so broad that it could refer to any of the "hundreds of orders or contracts" placed by the borough during the 2 1/2-year period specified in the indictment. From what has been said above, the indictment must be held to refer only to contracts given to Home Owners Construction Co., Frank Toriello & Sons, Inc., Sanitary Construction Co., or Dominick Romeo. The defendant need anticipate in his defense only awards or promises to those specified concerns, in effectuation of *190 which direction we have said above that he may be allowed a bill of particulars. The length of the period of continuance of the alleged misconduct cannot be the basis for an attack on grounds of vagueness. "An indictment for misconduct in office may allege a series of acts spread across a considerable period of time." State v. Weleck, 10 N.J. 355, 374 (1952).
While no objection is raised by defendant to the indictment on grounds of duplicity, we point out that since all of the misconduct charged to the defendant here is cognate to the offense of misconduct in office, the indictment is free from attack on that ground. State v. Bolitho, 103 N.J.L. 246, 260, 261 (Sup. Ct. 1927), affirmed 104 N.J.L. 446 (E. & A. 1927).
This indictment is concededly not a model of clarity, precision or felicitousness of expression. This, however, is not necessarily fatal. State v. Closter Village, Inc., supra (31 N.J. Super. at page 572). Our careful consideration of the document leads us to the conclusion that the offense charged is in substance sufficiently identified as to time, nature and circumstances as to apprise the defendant of that with which he is charged, to enable him to make his defense, and to afford him the protection of the prohibition against double jeopardy.
Affirmed.
HANEMAN, J.A.D. (dissenting).
I am in agreement with the conclusions of my colleagues concerning the nonrepeal of R.S. 40:50-1, but I dissent from the balance of their conclusions.
The factual recital contained in the majority opinion should be supplemented by the following: Defendant made demand for a written bill of particulars, which was denied by the trial court by an order dated April 14, 1958. No appeal was taken from this action. On May 2, 1958 defendant moved to quash the indictment. He assigned, among others, the following grounds in support of that motion to quash:
*191 "3. The indictment fails to charge the defendant with the non-performance of any duty imposed by law on him.
4. The indictment fails to charge the defendant with any corruption.
5. The terms of the indictment are so vague and indefinite that defendant is denied due process in being required to stand trial thereon and thereby is deprived of his constitutional rights under the United States Constitution and the Constitution of New Jersey.
6. The indictment is without sufficient certainty so as to protect the defendant against double jeopardy under the United States Constitution and the Constitution of New Jersey."
The trial judge filed an opinion which reads, in part:
"This is a motion by the defendant to quash indictment No. S-324-57 charging the defendant, Williford T. Williamson, with Misconduct in Office while a public officer, Municipal Manager of the Borough of Fairlawn, during the period August 11th, 1953 continuously to and including January 24th, 1956 when charged with the duty of that office to negotiate contracts for the municipality according to law, unlawfully and willfully failed, neglected and refused to observe the provisions of R.S. 40:50-1 requiring advertising public bidding, and awarding of contract to the lowest responsible bidder where sums to be expended exceeded $1,000.00; further charging the defendant willfully and deliberately circumvented and disregarded his public duty of his public office in respect to obtaining bids on such work in excess of $1,000.00 by splitting up the contracts by way of purchase orders each in sums of less than $1,000.00 authorizing the work to be awarded and the sum to be expended therefore exceeded the prescribed limit of $1,000.00 specifying with particularity in the indictment the four contractors, and nature and type of work in respect to which the defendant committed such offense. * * *"
Referring to the specific grounds urged on the motion and referred to hereinabove, the court continued:
"(3) The indictment fails to charge non-performance of any duty imposed by law. As heretofore stated, the indictment charges defendant with the public duty of his public office to comply with the bidding statute in negotiating municipal contracts which he is directly charged with deliberately and willfully evading in violation of his public duty.
(4) The indictment fails to charge corruption. No express charge of corruption is necessary to support an indictment for Misconduct in Office for non-feasance.
(5 and 6) The times of the indictment are so vague and indefinite as to abuse the due process. The date of the continuing offense  August 11th, 1953 and thence continuously to and including January *192 24th, 1956, the duty, the office, the place, the nature of the contracts, and the contractors are all specifically named and described in the indictment. There can be no question from an examination of the indictment that the offense and specific instances of Misconduct in Office of the defendant are clearly alleged with sufficient factual support to apprise the defendant of the exact and particular nature of the offense charged to enable him to prepare his defense and protect him against double jeopardy in the future."
On May 26, 1958 an order was entered denying the motion to quash. On June 16, 1958 this court granted defendant leave to appeal from the denial of the motion to quash.
In assaying the recitals of the indictment it is well to iterate some basic principles by which I am guided to my conclusions in this matter.
An indictment serves two fundamental purposes, to wit: (1) to inform the defendant of the nature of the offense charged, so that he may adequately prepare his defense, and (2) to serve as a shield against another indictment for the same offense. It also serves to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one is obtained. State v. Winne, 12 N.J. 152 (1953); State v. Lefante, 12 N.J. 505 (1953); State on Complaint of Bruneel v. Bruneel, 14 N.J. 53 (1953).
R.R. 3:4-3(a) provides that "[t]he indictment or accusation shall be a written statement of the essential facts constituting the offense charged." (Emphasis supplied)
If a defendant should again be indicted for the same crime he may use the first indictment and his conviction or acquittal thereon to avoid the threat of being placed twice in jeopardy. This is so by virtue of the N.J. Const., Art. 1, par. 11 (1947) and the common law. State v. Lefante, supra; State v. Di Giosia, 3 N.J. 413 (1950).
The State, by the indictment sub judice, seeks to charge defendant with the common-law offense of misconduct in office. Among the crimes encompassed by a charge of misconduct in public office are three distinct common-law criminal offenses: nonfeasance, misfeasance and malfeasance in public office.
*193 In State v. Winne, supra, 12 N.J. at page 163, the court said:
"Among the distinct crimes for which a public official may be indicted at common law are nonfeasance, misfeasance and malfeasance in public office, 1 Burdick, Law of Crime (1946), sec. 272. The distinction between these three separate crimes relates to a familiar classification that not only runs through the law of crime but the law of torts as well. Each of these three crimes has its own distinctive elements, and one is not to be confused with either of the others. The crimes of misfeasance and of malfeasance are mentioned here, not because they are involved in the law, but because in this argument both here and in the trial court decisions dealing with misfeasance and malfeasance in public office were relied upon as if they had a bearing on nonfeasance. Such a course of reasoning about different crimes with diverse ingredients as if they were one and the same inevitably tends to confusion of thought and consequently to error in law." (Emphasis supplied)
See also 2 Schlosser, Criminal Laws of New Jersey, c. 74, pp. 847-876 (1953); 1 Burdick, Law of Crime, § 272, pp. 387-392 (1946).
Nonfeasance is the failure to perform a duty. Newman v. Ocean Township, 127 N.J.L. 287 (E. & A. 1941); Lentini v. Town of Montclair, 122 N.J.L. 355 (Sup. Ct. 1939).
Misfeasance is the wrongful and injurious exercise of lawful authority, or the doing of a lawful act in an unlawful manner. Milstrey v. City of Hackensack, 6 N.J. 400, 408 (1951); Allas v. Borough of Rumson, 115 N.J.L. 593 (E. & A. 1935).
Malfeasance is the doing of an act which is positively unlawful or wrong. Allas v. Borough of Rumson, supra.
Reasonable certainty is a prerequisite to the validity of an indictment. State v. DeVita, 6 N.J. Super. 344 (App. Div. 1950).
It is essential that an indictment for misconduct in office allege both a prescribed duty of the office and facts constituting a breach thereof. State v. Weleck, 10 N.J. 355, 366 (1952).
In State v. Jenkins, 136 N.J.L. 112, 113 (Sup. Ct. 1947), appeal dismissed on procedural grounds 137 N.J.L. 209 *194 (E. & A. 1948), the court said, in connection with an indictment charging nonfeasance:
"Misconduct of that nature necessarily consists of a particular incident or of a series of particular incidents. It is not just an attitude. It is action; or it is non-action with respect to specific incidents. There is not a failure to raid a pool room unless a particular pool room exists, not a failure to lay complaints unless there are particular persons against whom complaints should be laid, and not a failure to seize gambling equipment unless there are particular items of equipment in existence intended for or used for the unlawful purpose. There can be no conviction on such a charge unless the particular incident or a multiplicity of such incidents is proved. A defendant is unable to plead or to prepare a defense against such proofs unless he knows in advance the particular offense or offenses counted upon; not merely the general definition of the crime, either in the words of the statute or according to the common law, but such details of the act or omission as will enable him to know precisely what accusation is laid against him and to prepare his case with foreknowledge of what he will be called upon to meet."
See also State v. Daly, 3 N.J. Super. 247 (App. Div. 1949), certification denied 3 N.J. 367 (1949).
We are here obliged to construe an indictment in order to ascertain with what crime it is sought to charge defendant. This construction is necessitated by the ambiguous language in which the indictment is couched. The indictment embodies phraseology selected solely by the prosecutor; it was he who chose the wording. The purpose and intent of the selected language is something peculiarly within his knowledge. Unlike written contracts which result from bilateral agreement, there is no bar to the receipt of parol statements from the scrivener of an indictment for the purpose of determining the meaning which he intended to convey by the written word. Contrawise, in order to determine with what crime it was intended that defendant be charged, great weight should be accorded to such expressions to ascertain the meaning to be imputed to allegations under which the author of the indictment sought to spell out defendant's duty and his breach thereof. Defendant must be prepared to defend himself against the proofs which the prosecutor will submit *195 to sustain such charges as he (the prosecutor) conceive are made in the indictment. This is not to say that such statements are conclusive of the meaning of the wording employed, or that a prosecutor could, by a statement of his intent, cure an indictment which is defective. Rather, the wording is measured to ascertain whether a defendant, from his reading of the charge, can be said to have been fairly apprised of the crime with which it was intended to charge him, and of the essential facts constituting that crime, and is thereby able to adequately prepare his defense and have the benefit of the rights guaranteed to him.
Reference is first made to the State's argument in order to ascertain what connotation it has placed upon its own handiwork. The State urges in its brief that "[t]he indictment in question charges misconduct in office  nonfeasance by reason of defendant's wilful, deliberate evasion of the bidding laws [40:50-1] * * *" and that the defendant continuously violated his duty in this respect during a period of 2 1/2 years.
The State seeks to charge defendant with the common-law crime of nonfeasance in public office. That crime is but one of the crimes encompassed by the common-law crime of official misconduct in public office. Among the other distinct crimes at common law with which a public official may be charged are the crimes of misfeasance and malfeasance in public office. While there is no need to specify which of those distinct crimes is charged, it must appear clearly from the factual recitals of the indictment. Here the position of the State is made manifestly clear. It seeks to charge defendant with the common-law crime of nonfeasance in public office.
In reply to an inquiry by this court at the time of argument as to whether the award of contracts was an essential element of the crime charged, the assistant prosecutor replied by letter that "the indictment was drawn so as to allege the entering into contracts and the awarding of contracts by the defendant Williamson because while he had no such power, he actually did award the contracts in question." *196 (Emphasis supplied by prosecutor.) The implication of this statement is that the defendant stands charged with the commission of a single crime, an essential element of which is the award of contracts, and not two crimes, as the opinion of the majority concludes.
To paraphrase the foregoing, the State concludes by specious reasoning that the indictment charges the common-law crime of nonfeasance in office. Its argument may be restated by this syllogism: Defendant had a duty to observe the requirements of the public bidding laws; he awarded contracts in contravention of those laws; therefore, he is guilty of nonfeasance for not observing the bidding laws.
The indictment charges the commission of an affirmative act in contravention of the statute and not the omission of a duty to act. It must follow logically that the commission of an affirmative act in contravention of a statutory mandate denotes an omission to comply with that mandate, but it does not follow that such conduct constitutes nonfeasance. The gravamen of the crime of nonfeasance, and a necessary incident thereof, is the complete failure to act. In order that there be a failure to act there must be a duty to act and a subject to which the duty is referable. An essential element of misfeasance is the wrongful and injurious exercise of a lawful power and the accomplishment of an act contrary to the statutory edict, i.e., in an unlawful manner. If defendant had any duty under R.S. 40:50-1, the allegation of the facts in the indictment on the breach thereof spell out a charge of misfeasance in office and not of nonfeasance.
The misconception by the State of the criminal aspect of the effect of defendant's alleged affirmative acts clearly demonstrates the confused and confusing nature of the indictment. Under the foregoing construction of the asserted duty under R.S. 40:50-1 and the alleged breach, the trial court should be prepared to try defendant for misfeasance and defendant would prepare his defense to meet proof of that crime. At the trial, however, the State, under its *197 construction, as above noted, would adduce testimony to sustain a charge of nonfeasance. The basic elements of these crimes are so opposite in nature as to require the preparation of entirely different defenses. In fact, State v. Winne, supra, admonished that, "Each * * * has its own distinctive elements and one is not to be confused with either of the others." The incorrect deduction by the State of the nature of the crime charged by the verbiage of the factual allegations of the indictment highlights and demonstrates the failings inherent therein.
Further, defendant argues, if the indictment charges any crime it is neither nonfeasance nor misfeasance, but rather malfeasance, since he had neither the power nor the duty to personally award contracts. The sole power which he had in relation to contracts was the power to negotiate. No binding contract with the municipality could eventuate without the express approval and award of the common council. Therefore, it is argued, if defendant is alleged to have awarded contracts, under any circumstances, he must stand charged with the commission of an act positively unlawful or wrong, and hence malfeasance in office, since he would then have arrogated unto himself the exercise of a power which he did not enjoy.
It becomes necessary to determine whether defendant had the power and the duty to award contracts; specifically, what duties did defendant owe with reference to the award of contracts for work and materials, borough fill and divers other types of work? The inquiry can be answered by reference to the general laws of the State.
R.S. 40:82-4 provides that "[t]he municipal manager shall * * * [n]egotiate contracts for the municipality subject to the approval of the municipal council * * * [and that he] shall in all matters act under the direction and supervision and subject to the approval of the municipal council." It is clear from a reading of that statute that defendant had no power to award a contract. The duty he owed was to negotiate contracts for the municipality.
*198 R.S. 40:50-1 provides:
"No municipality shall enter into any contract for the doing of any work, or for the furnishing of any materials, supplies or labor, or the hiring of teams or vehicles, where the sum to be expended exceeds the sum of one thousand dollars, unless the governing body shall first publicly advertise for bids therefor, and shall award the contract to the lowest responsible bidder." (Emphasis supplied)
The statute specifically enjoins the power to award contracts upon the governing body.
The duty to advertise for bids for contracts, as provided in R.S. 40:50-1, where the expenditure thereunder exceeded $1,000 is also imposed upon the governing body by express language. The reason for the imposition of this duty is that the governing body alone was vested with the power to award contracts. The duty to advertise is appended to the power to award contracts. Hence, the governing body alone has the power to contract and the duty to advertise prior to an award.
It therefore appears that the defendant had the power to negotiate but not to award a contract. The final award of a contract must be by action of the governing body. No legal contractual relationship with the municipality eventuates unless the governing body has taken formal action to that end. Although the indictment alleges that the defendant had a duty "to refrain from entering into any contract," contrary to N.J.S.A. 40:50-1, there appears no allegation that he had any statutory power or duty to enter into contracts by virtue of his office as city manager.
If the indictment sought to charge that the defendant awarded contracts without the power to so award, he stands charged with the commission of a positively illegal and wrongful act and therefore stands charged with malfeasance. Although the State's brief does not so argue, the supplemental letter could conceivably imply that the State now seeks to charge defendant with malfeasance. There is absent any charge of a corrupt motive, which is an essential element of the crime of malfeasance.
*199 In State v. Winne, supra (12 N.J. at page 175), the court said:
"The defendant, drawing on decisions dealing with malfeasance in office, insists that corruption is an essential ingredient of the indictment, and that the failure of the indictment to charge corruption renders it fatally defective. This might be true if the indictment were for malfeasance, for malfeasance implies corruption. The indictment here, however, is not for malfeasance but for nonfeasance, and corruption has never been an element of nonfeasance. If it were, it would become identical with malfeasance. The furthest the authorities go in any form of official misconduct is to require an allegation in the indictment of either willfulness or corruption, depending on whether the charge is nonfeasance, misfeasance or malfeasance:
`One in office is indictable at the common law, confirmed by statutes in most of our states, if he willfully or corruptly neglects or declines any official duty, equally whether prescribed by the written law or by the unwritten.' 1 Bishop, Criminal Law, (8th ed. 1892), sec. 468 al.
See also Ex parte Amos, 93 Fla. 5, 112 So. 289 (Sup. Ct. 1927), where it was said:
`The common-law offense, however, must be charged as having been willfully or corruptly done or omitted. In the absence of such allegation the indictment in this case merely charges the comptroller with an error of judgment in a matter where the complicated and intricate details of a banking business may have misled him to unwise nonaction, but there is no charge of willful or corrupt nonaction upon his part.'"
For a learned discussion of the meaning of the term "corrupt," see State v. Winne, 21 N.J. Super. 180 (Law Div. 1952).
If defendant violated the duty of utmost good faith imposed upon him as a public official by concealing from council facts which would lead to the conclusion that the expenditure under a contract would exceed $1,000, or by misleading council to believe that certain contracts would not require the expenditure of over $1,000, and, as a result, council awarded certain specific contracts in violation of the statutory mandate (R.S. 40:50-1), such conduct, if properly alleged in an indictment, would spell out a criminal act.
*200 Parenthetically, an examination of the breach which the majority has designated [2] in paragraph 4 of the indictment might conceivably lead to the conclusion that the State sought to charge defendant with a course of conduct such as I have suggested. But the language of the indictment is woefully inadequate to express such an intent with reasonable certainty. In connection therewith, it should also be noted that the State disclaims any purpose of so charging the defendant and insists that the essential element of the crime charged is the personal award of contracts by the defendant. To repeat, the sole thrust of the State's argument and its construction of the indictment is that defendant stands charged with awarding contracts contrary to R.S. 40:50-1 and that this breach of his public duty constitutes nonfeasance.
The horns of the dilemma upon which defendant finds himself in the preparation of a defense become self-evident. Does the verbiage of the indictment place the defendant in a position where he must be prepared to deny and disprove that for 2 1/2 years he continuously violated R.S. 40:50-1 in awarding contracts for "divers other types of work," or R.S. 40:82-4 in the negotiation of contracts, or R.S. 40:82-4 in the negotiation of contracts in violation of R.S. 40:50-1 and in obtaining the approval thereof by the common council? Does he stand charged with nonfeasance, misfeasance or malfeasance?
Further, whether we consider the crime as charged to be nonfeasance, misfeasance or malfeasance, the indictment fails to specify the facts concerned in the breach of an asserted duty. This is a basic ingredient of an indictment charging any such offense. State v. Jenkins, supra; State v. Daly, supra.
The language employed is of the most general and sweeping nature. Nowhere does there appear the particulars of a single contract which defendant is alleged to have awarded in breach or circumvention of the cited statute. Although the State adverts to the reference in the indictment to Home Owners Construction Co., Frank Toriello & Sons, Inc., *201 Sanitary Construction Co., and Dominick Romeo as filling this void, it is to be noted that it is there charged that defendant did "negotiate, arrange and promise that he would award the contract." (Emphasis supplied) It is not alleged that he did award a contract or contracts. So stated, the charge is not that defendant failed to perform a duty or that he performed or accomplished an illegal act, but rather that he agreed to do the latter in futuro. This states, at most, that defendant had an intent to do the specific act. The State asserts that an award of a contract is an essential element of the crime charged, yet it failed to name the recipient of a contract, let alone to supply any related details.
It is axiomatic that mere intention, unaccompanied by an overt act, is insufficient to constitute a crime at common law. A promise to commit a crime is merely a statement of intention. The basic constituents of a crime at common law are an evil intention and an unlawful act. State v. Gaynor, 119 N.J.L. 582, 586 (E. & A. 1938); State v. Labato, 7 N.J. 137, 149 (1951); 1 Burdick, The Law of Crime, § 98, p. 107 (1946). It follows that the indictment does not charge a crime. It lacks an essential element.
Then too, sight should not be lost of the fact that defendant stands charged with a course of conduct of a continuous nature covering a period of 2 1/2 years. The word "continuously" is used on five separate occasions in paragraph 4 of the indictment as descriptive of the acts of breach of duty. "Continuously" is defined in Webster's New International Dictionary (2d ed.):
"Having continuity of parts; without break, cessation, or interruption; without intervening space or time; uninterrupted; unbroken; continued; as, a continuous road or murmur."
"Continuously," taken in the context of the indictment, connotes that the acts alleged were committed without an hiatus, i.e., that defendant awarded every contract for "fill for borough purposes, road improvements, storm drain improvements, and divers other types of work" in the manner therein set forth. (Emphasis supplied) It is appreciated *202 that the criticism of super-technicality might be levelled at such a conclusion, since an indictment "will not be nullified merely because it is inartfully or awkwardly worded or disorderly in the arrangement of its allegations." State v. Lombardo, 20 N.J. Super. 317, 321 (App. Div. 1952). However, it must be borne in mind that the defendant stands charged with a crime under an indictment prepared by an intelligent prosecutor who studiously and repetitiously used a word of art. This is something other than an "inartful or awkward" mode of expression. The repetition of that descriptive word was patently aptly and intentionally used.
Not only does the State assert that defendant awarded contracts for specific types of work, but that he awarded, as well, contracts for "divers other types" of work. It is conceivable that the municipality would have granted a multitude of contracts during the time period designated in the indictment. Were the indictment sustained defendant would have to examine and be prepared to adduce proof as to every contract let by the governing body during that period, not only for the specific work but "for divers other types of work" as well. To state such a proposition patently demonstrates the vital necessity of a description of the particular contracts involved and the inadequacy of the indictment sub judice.
The State has cited both State v. Weleck, supra (10 N.J. 355), and State v. Witte, 13 N.J. 598 (1953), in an attempt to sustain the effective validity of this indictment. In each of those cases the defendant stood charged with nonfeasance and the indictment charged the willful and knowing failure of official duty in specifically designated respects. The breaches were alleged with particularity, setting forth dates, persons and occasions.
The indictment is insufficient not only for the foregoing reasons but as well because the trial judge could not determine whether the facts alleged are sufficient in law to support a conviction, should one be obtained. By the same token, it follows that the indictment is couched in such vague generalizations that the record would not support a plea of autrefois acquit or autrefois convict, were the *203 defendant convicted of misconduct in connection with one single contract and were any future proceedings taken against him for a similar offense in connection with another contract let during the 2 1/2 years involved.
The State has affirmed that the indictment charges the commission of one crime and that the award of contracts is an essential element of the crime so charged. This is the woof which is woven through the warp of all of the allegations. The majority has, however, ignored this statement. They find that defendant is enjoined by law with four public duties and stands charged with breaches of only two. If their conclusion is correct, then defendant stands charged with two crimes in one count, i.e., (1) the actual award of contracts, and (2) the promise to award contracts without any subsequent overt act in fulfillment of such promise. Hence, the indictment must bear the vice of duplicity. In such cases, the State is permitted, if any single charge is properly set out, to strike all but that charge. State v. Weleck, supra (10 N.J. at page 375). The State should at least have been put to such an election.
I am in accord with what my colleagues say concerning defendant's duty to render "honest performance of [his] obligations in good faith." This generality ignores the issue which, simply stated, is: "Has defendant been adequately indicted of having committed the common law offense of misconduct in office? Has he been adequately indicted for failing to perform his `obligations' (duties) in good faith?"
The question is not whether a city manager may be "immune from criminal prosecution for misconduct in office in effectuating such contracts * * * in the name of the municipality in willful disregard of the bidding statutes * * *," but rather whether all the essential elements of such conduct have been charged; whether the indictment is sufficiently clear to apprise the defendant that he stands charged with such misconduct.
It is suggested by the majority that defendant can be apprised of that which is lacking in the charge as set forth in the indictment by a bill of particulars. That suggestion *204 begs the question. Further, it results in an anamoly, for the trial court has already denied defendant a bill of particulars. The indictment is deficient for want of a statement of the essential facts and may not be cured by a bill of particulars. State v. Daly, supra; State v. Sullivan, 33 N.J. Super. 138 (App. Div. 1954).
A zealous desire to apprehend and convict the guilty should be no excuse for the failure of the State to prepare an indictment according to recognized legal principles. Such a desire should not blind us to the legal requirements adopted for the protection of the innocent, and this regardless of whether the party to be charged is a public official. A public official is entitled to the same constitutionally guaranteed rights as any other citizen. A prosecutor has not only the duty to prosecute the guilty but to do so in accord with recognized legal precepts.
It must be recognized, as stated in State v. Winne, supra (12 N.J. at page 181) that:
"The power to quash an indictment rests in the sound discretion of the trial judge, but this discretion should not be exercised `except on the plainest ground,' State v. Ellenstein, 121 N.J.L. 304, 325 (Sup. Ct. 1938), or on `the clearest and plainest ground,' as it was put in State v. Davidson, 116 N.J.L. 325, 328 (Sup. Ct. 1936), or unless the indictment is `palpably defective,' State v. Russo, 6 N.J. Super. 250, 254 (App. Div. 1950), especially where the statute of limitations has run, State v. Tilton, 104 N.J.L. 268, 274 (Sup. Ct. 1928), State v. Acton, 9 N.J. Misc. 55, 58 (Sup. Ct. 1931). Our courts have repeatedly held that `discretion ought not to be exercised in a case like this where injustice may be done thereby to the State and where refusal to exercise it deprives the defendants of no substantial rights.' State v. Lehigh Valley Railroad Company, 90 N.J.L. 372, 376 (Sup. Ct. 1917)."
We are here confronted with the clearest and plainest ground for quashing the indictment. Note, too, that the State would suffer no injustice if the indictment were now quashed. The bar of the statute of limitations, N.J.S. 2A:159-2, as am. L. 1953, c. 204, p. 1554, would affect not more than the first six months of the 2 1/2-year period during which defendant is alleged to have continuously *205 violated his public duties. In connection with proof of facts barred by the statute of limitations, see State v. Weleck, supra (10 N.J. at page 376).
I would reverse and direct that an order be entered in the trial court quashing the indictment.